SONIA JIMENEZ AND NANCY SERRA, AS OWNERS AND DISTRIBUTEES OF A JUDGMENT IN
FAVOR OF RAUL GUTIERREZ, PLAINTIFF-APPELLEES V. BRUCE E. BROWN, DEFENDANT-
APPELLANT

No. COA98-54

(Filed 29 December 1998)

## 1. Attachment— foreign judgment—debtor's concealment to avoid service of summons

The trial court's finding that defendant judgment debtor's property was subject to attachment on the ground that he had concealed himself in North Carolina with the intent to avoid service of summons was supported by the evidence, including evidence of plaintiff judgment creditors' many attempts at service of process and an attempt by defendant to mislead plaintiffs into believing that the person they had located and attempted to serve in North Carolina was not actually the judgment debtor.

## 2. Attachment— contents of safe deposit boxes

The contents of a judgment debtor's safe deposit boxes are subject to attachment by judgment creditors.

## 3. Attachment— bank account—Uniform Transfers to Minors Act

A bank account titled in a judgment debtor's name as custodian for his minor son pursuant to the N.C. Uniform Transfers to Minors Act was not subject to attachment by the judgment creditors because it is the minor's property.

## 4. Attachment— bank account—Totten Trust

A Totten Trust bank account created by a judgment debtor for the benefit of his minor son pursuant to N.C.G.S. § 53-146.2 was attachable by his judgment creditors because the debtor retained complete control over the account until his death, the trust was fully revocable, and the trust was revoked in part each time the debtor withdrew funds from the account.

## 5. Attachment— joint bank account—contribution by judgment debtor

A joint bank account of a judgment debtor and his minor son was attachable by the judgment creditors to the extent of the debtor's contribution to the account.

JIMENEZ v. BROWN

[131 N.C. App. 818 (1998)]

Appeal by defendant from order entered 3 November 1997 by Judge G.K. Butterfield, Jr., in Wilson County Superior Court. Heard in the Court of Appeals 16 November 1998.

*Walter L. Hinson, P.A., by Walter L. Hinson and Meredith P. Ezzell, for plaintiff-appellees.*

*Rose, Rand, Orcutt, Cauley, Blake & Ellis, P.A., by Susan K. Ellis, for defendant-appellant.*

SMITH, Judge.

On 15 January 1974, judgment was entered against defendant in Dade County, Florida, in the amount of $1,418,350.16, plus six percent interest. This judgment resulted from a traffic accident that occurred on 1 January 1973 in Dade County. An amended judgment was entered 12 February 1974 directing that plaintiff Raul Gutierrez recover from defendant's insurer the limit of the liability policy, $10,000. The insurer paid that sum and judgment against defendant was reduced accordingly. Defendant paid no part of the original judgment.

Defendant left the state of Florida approximately one year after judgment was entered. Plaintiff Gutierrez was advised by defendant's attorney and insurer that, after diligent efforts to locate defendant, it appeared that defendant had left the country and would not return.

Plaintiff Gutierrez died on 16 August 1981. His assets, including the unpaid judgment, were distributed one-half to plaintiff Sonia Jimenez and one-half to plaintiff Nancy Serra as beneficiaries of the estate. Judgment was assigned to plaintiffs Jimenez and Serra.

On 13 January 1994, plaintiffs brought suit on the original judgment in Dade County, Florida. Attorneys for plaintiffs located defendant in the State of North Carolina. Service of process was attempted by sending suit papers by certified mail and regular mail to defendant's Rocky Mount address. The certified mail was returned; the regular mail was not returned. Further attempts to serve defendant proved unsuccessful. After multiple attempts at serving defendant by mail failed, plaintiffs were finally successful on 16 September 1994, when a private service agent personally served defendant with a copy of the summons and complaint. On or about 23 November 1994, the Dade County Circuit Court entered an Order Impressing Jurisdiction on Defendant Bruce E. Brown. The court found, after reviewing the evidence presented, that defendant was avoiding service of process

and had actual knowledge of the suit. The court entered a judgment of default against defendant on 21 March 1995. On 6 June 1995, final judgment was rendered in favor of plaintiffs against defendant in the sum of $3,215,977.29, plus costs of $638.75, with interest at the rate of twelve percent per year from the date of judgment. This judgment remained (and continues to remain) unpaid. On 28 August 1997, plaintiffs filed a complaint in Wilson County Superior Court seeking judgment giving full faith and credit to the Florida judgment and an order attaching the assets of defendant.

As grounds for attachment, plaintiffs alleged in their affidavit that defendant was "[a] resident of the state who, with intent to defraud his creditors, or to avoid service of summons . . . keeps himself concealed therein." On 28 August 1997, the assistant clerk of superior court for Wilson County entered orders of attachment for various bank accounts and safety deposit boxes. On 11 September 1997, defendant filed a Motion to Vacate Order of Attachment. On 29 September 1997, Judge Butterfield ordered the attachment of a corporate bank account to be dissolved. Thereafter, on 3 November 1997, after hearing arguments of counsel and reviewing the record and affidavits, Judge Butterfield denied defendant's motion, finding in pertinent part:

   7. It further appears from the evidence that the Defendant, Bruce Brown, has consistently and continually, prior to the filing of the Complaint in this matter, kept himself concealed herein with intent to defraud his creditors or to avoid service of summons.

   8. Pursuant to the Orders of Attachment properly issued by the Clerk of Superior Court of Wilson County, the Sheriffs of Edgecombe, Nash and Wilson Counties served and caused to be attached by this Court the following assets: . . .

      . . . .

   10. The assets described hereinabove are assets of the Defendant. Each asset is held by the respective bank in the name of the Defendant individually or in the name of the Defendant as depositor or custodian for Sean E. Brown. Such accounts are subject to levy under execution against the Defendant.

The judge made conclusions of law in accordance therewith. From this order, defendant appeals.

**[1]** Defendant first argues that the trial court erred in concluding that defendant has concealed himself in North Carolina with the intent to avoid service of summons. The statute on which plaintiffs relied in seeking attachment is N.C. Gen. Stat. § 1-440.3 (1996), which states:

> In those actions in which attachment may be had . . ., an order of attachment may be issued when the defendant is
>
> . . .
>
> (4) A resident of the State who, with intent to defraud his creditors *or to avoid service of summons,*
>
>> a. Has departed, or is about to depart, from the State, or
>>
>> b. Keeps himself concealed therein . . . .

After reviewing the record and arguments before it, the trial court held that defendant had, in fact, concealed himself within this state for the purpose of defrauding creditors or avoiding service of summons. It is well settled that the trial court's findings of fact "are binding on the appellate court if supported by competent evidence, even if there is evidence to the contrary." *Huyck Corp. v. Town of Wake Forest,* 86 N.C. App. 13, 15, 356 S.E.2d 599, 601 (1987), *aff'd,* 321 N.C. 589, 364 S.E.2d 139 (1988). Plaintiffs presented affidavits with accompanying exhibits evidencing their argument that defendant was avoiding service of process. Some of the evidence presented to the trial court indicated that defendant received business mail at a post office box in Rocky Mount, North Carolina. On one of plaintiffs' many attempts at service of process, plaintiffs mailed the summons and complaint to defendant at his post office box. The unopened envelope was returned to plaintiffs' attorney, with a return address written in the top left corner reading "F.B. Brown" and listing defendant's post office box. Plaintiffs argue that this behavior evidences defendant's intent to cause plaintiffs to question whether the Bruce Brown they had located was the same one involved in the 1973 Florida automobile accident. After considering all of the evidence, we conclude there was sufficient competent evidence to support the trial court's finding that defendant "consistently and continually . . . kept himself concealed herein with intent to defraud his creditors or to avoid service of summons." This assignment of error is overruled.

**[2]** Defendant next argues that the trial court erred by not dissolving the orders of attachment relative to defendant's safety deposit boxes. Defendant argues that "[s]ince a safe deposit box does not belong to

a customer but is only rented by the customer from the Bank, a safe deposit box is not property owned by the customer. If the box is not owned by the customer, it cannot be levied upon." This argument is unpersuasive. Although our courts have not previously addressed the issue of attachment of safe deposit boxes, the generally accepted rule is that "the contents of a safe-deposit box may be reached by attachment or garnishment." 6 Am. Jur. 2d, Attachment and Garnishment § 100 (1963) (citing *Tillinghast v. Johnson*, 82 A. 788 (R.I. 1912); *West Cache Sugar Co. v. Hendrickson*, 190 P. 946 (Utah 1920)); *see also National Safe Deposit Co. v. Stead*, 95 N.E. 973 (Ill. 1911), *aff'd*, 232 U.S. 58, 58 L. Ed. 504 (1914); *Trowbridge v. Spinning*, 62 P. 125 (Wash. 1900). We quote with approval the reasoning of a much-cited 1925 case from New York:

> There is no doubt that the Safe Deposit Company has a general and surrounding control and possession of the box. It owns the building and the vault in which the box is located, and makes rules for the customer's access to the box which generally require the assistance of the company in opening it. This possession and control, however, is exercised for the purpose of securing a greater safety for the customer rather than of asserting possession as against him of the contents of the box to which, under proper rules and regulations, he has unquestioned and unqualified access.

> . . . .

> If a debtor could withdraw his property from the reach of creditors by simply placing it in a safe deposit vault, avoidance of responsibility for obligations would be made easy, and a broad and easily accessible highway opened for escape from an effective administration of the law.

*Carples v. Cumberland Coal & Iron Co.*, 148 N.E. 185, 186-87 (N.Y. 1925) (citations omitted). This is most easily equated with a business owner who leases office space. Although the building he is renting could not be attached as it belongs to another, the contents therein, which are owned and controlled by the business owner, would be subject to attachment. We therefore hold that safe deposit boxes, or the contents therein, are subject to attachment by judgment creditors. This assignment of error is overruled.

[3] As defendant's next two assignments of error, he argues the trial court erred in attaching two bank accounts that "are titled in

Defendant's name, as custodian for his son, Sean E. Brown, under the North Carolina Uniform Transfers to Minors Act [(UTMA)]."

Pursuant to N.C. Gen. Stat. § 33A-9 (Cum. Supp. 1997),

> (a) Custodial property is created and a transfer is made whenever:
>
> . . .
>
> > (2) Money is paid or delivered, or a security held in the name of a broker, financial institution, or its nominee is transferred, to a broker or financial institution for credit to an account in the name of the transferor, an adult other than the transferor, or a trust company, followed in substance by the words: "as custodian for _____ (name of minor) under the North Carolina Uniform Transfers to Minors Act[.]"

Furthermore, an account set up under this section "is irrevocable, and the custodial property is indefeasibly vested in the minor." N.C. Gen. Stat. § 33A-11(b) (1987). This section further provides that the custodian has all the rights and authority provided for by the Act. *See id.* Such rights and authority include the authority to take control of the custodial property and to collect, manage, or invest it in the best interests of the minor. N.C. Gen. Stat. § 33A-12(a) (1987). The custodian is required to keep custodial property "separate and distinct from all other property" and to keep sufficient records of all transactions with respect to the property. N.C. Gen. Stat. § 33A-12(d)-(e) (1987). Thus, the Act specifically enumerates a custodian's duties, rights, and authority.

Most importantly, for our purposes, the Act limits the circumstances under which a third party may assert a cause of action against the custodial property. N.C. Gen. Stat. § 33A-17(a) (1987) states that

> [a] claim based on (i) a contract entered into by a custodian acting in a custodial capacity, (ii) an obligation arising from the ownership or control of custodial property, or (iii) a tort committed *during the custodianship*, may be asserted against the custodial property by proceeding against the custodian in the custodial capacity[.]

This provides an exclusive list of when a third-party claimant may recover against the custodial property. A tort committed *prior to* the custodianship is not enumerated within this list; therefore, if the accounts are set up under UTMA, they are not subject to attachment.

The only evidence we have before us regarding the first account at issue, the Centura bank account, is a signature card for the account. First, under the "Name and Address of Depositor(s)," it states "Bruce E. Brown[,] custodian for Sean E. Brown Under the N.C.U.T.M.A." Second, under the section entitled "Ownership Type," the card is marked "X" by the blank "Custodian Under N.C.U.T.M.A." Defendant is shown as custodian, with Sandra J. Brown as successor custodian. We can find no competent evidence in the record on appeal supporting the trial court's decision not to dissolve the order of attachment for this account. In fact, all the evidence before us leads to the conclusion that the account was properly created pursuant to UTMA and thus is not subject to attachment because it is the minor's property. Thus, the judgment of the trial court is reversed on this issue.

[4] The second account, the Triangle bank account, was not set up under UTMA. From the evidence in the record, this account was set up as a trust account under N.C. Gen. Stat. § 53-146.2 (1994), with Sean Elliot Brown as beneficiary. This section states in pertinent part:

(a) If any person establishing a deposit account shall execute a written agreement with the bank containing a statement that it is executed pursuant to the provisions of this subsection and providing for the account to be held in the name of such person as trustee for not more than one person designated as beneficiary, the account and any balance thereof shall be held as a trust account, with the following incidents:

(1) The trustee during the trustee's lifetime may change the designated beneficiary by a written direction to the bank.

(2) The trustee may withdraw funds by writing checks or otherwise, as set forth in the account contract, and receive payment in cash or check payable to the trustee's personal order. Such payment or withdrawal shall constitute a revocation of the trust agreement as to the amount withdrawn.

This is a tentative trust, better known as a "Totten Trust." *See Baker v. Cox*, 77 N.C. App. 445, 335 S.E.2d 71 (1985), *disc. review denied*, 315 N.C. 389, 338 S.E.2d 877 (1986). With this type of account the depositor retains complete control over the funds until his death, the trust is fully revocable, and is revoked in part each time the settlor

withdraws funds from the account. Because of the total control the settlor retains over the account, it is fully reachable by creditors and, thus, subject to attachment. The trial court did not err in finding this account attachable.

[5] As defendant's last two assignments of error, he argues that a different bank account was not subject to attachment because it is in his son's name, with defendant as custodian. There is no evidence, nor is it argued, that this account was set up under UTMA. To the contrary, the evidence in the record shows that the account at issue "was opened . . . in the name of Sean Elliott Brown, Minor, Bruce Brown . . . ." There is no evidence that defendant was acting as custodian of this account. Rather, it appears that this account was established as a joint account. As a joint account, either party may terminate the account or withdraw all funds from the account. Although our courts have not yet spoken on the issue of whether joint accounts are subject to attachment by one of the account holder's creditors, the general rule among other jurisdictions is that "joint bank accounts are vulnerable to seizure by the creditor of one depositor . . . [to the limit of] the amount of the funds in the account equitably owned by the debtor depositor and do not extend to funds equitably owned by the innocent depositor." 11 A.L.R.3d 1465, 1473 (1967); *see, e.g., Amarlite Architectural v. Copeland Glass*, 601 So. 2d 414 (Ala. 1992); *Hayden v. Gardner*, 381 S.W.2d 752 (Ark 1964); *Miller v. Clayco State Bank*, 708 P.2d 997 (Kan. App. 1985); *Delta Fertilizer, Inc. v. Weaver*, 547 So. 2d 800 (Miss. 1989); *Baker v. Baker*, 710 P.2d 129 (Okla. App. 1985); *RepublicBank Dallas v. National Bank*, 705 S.W.2d 310 (Tex. App. 1986). Many of the courts following this general rule "hold that there is a presumption that all of the joint bank account is owned by the debtor . . ." and that the depositors have the burden to prove that ownership of the funds is otherwise. 11 A.L.R.3d at 1476; *see, e.g., Maloy v. Stuttgart Memorial Hosp.*, 872 S.W.2d 401, 402 (Ark. 1994); *Yakima Adjustment Serv., Inc. v. Durand*, 622 P.2d 408, 411 (Wash. App. 1981).

We believe that equitable ownership should be the determining factor and thus hold that joint accounts are attachable to the extent of a debtor's contribution to the account. To hold otherwise would allow seizure of money belonging to an innocent third party.

In this case, defendant held the account jointly with his minor son, who was nine years old at the time the account was opened. Although the record on appeal is silent as to who contributed the

funds for the account; the trial court held this account to be attachable. "[W]e are required, absent a showing to the contrary, to presume the trial court's determination was proper." *Hocke v. Hanyane*, 118 N.C. App. 630, 635, 456 S.E.2d 858, 861 (1995). Defendant has failed to make such a showing. Accordingly, the decision of the trial court is affirmed.

Affirmed in part, reversed in part.

Chief Judge EAGLES and Judge TIMMONS-GOODSON concur.