MARSHALL EDWARD BLAND, Administrator C.T.A. of the Estate of Lela B. Bland; and MARSHALL EDWARD BLAND, individually, Plaintiff v. BRANCH BANKING & TRUST CO., FRANKIE BLAND, TOMMY BLAND, SARAH BLAND, CHRIS GATES, JEFF BLAND, and CHUCK BLAND, Defendants

No. COA00-113

(Filed 1 May 2001)

1. Civil Procedure— summary judgment—findings and conclusions in order

The trial court did not err in an action to disburse funds under a trust agreement by including findings and conclusions in its summary judgment order even though they are not necessary, because: (1) such findings and conclusions do not render a summary judgment void or voidable; (2) the order makes clear that the findings were merely a summary of the material facts not at issue which justified entry of judgment; and (3) the inclusion of the undisputed material facts and the conclusions provides helpful guidance in reviewing the order.

2. Trusts— established at savings and loan association—trust agreement—validity—common law

Although the tentative trust established at a savings and loan association failed to comply with the statutory provisions of N.C.G.S. § 54B-130 as it existed on 30 March 1990, the trust agreement established a valid trust under the common law because: (1) decedent transferred title to the savings account to herself as trustee, subjecting herself as trustee to equitable duties to deal with the property for the benefit of the named beneficiaries, which was a transfer of a present beneficial interest such that the instrument was not testamentary in nature; and (2) the instrument satisfied the three elements to establish a valid trust including sufficient words to show intention to create the trust, a definite subject, and an ascertained object.

3. Trusts— distribution of assets—present vested interest in each beneficiary

The trial court erred by concluding that the funds in the savings account establishing a tentative trust became the property of decedent's estate upon her death and should be distributed in accordance with the residuary clause of her will based on a failure to comply with N.C.G.S. § 54B-130 as it existed on 30 March 1990, and by instructing the bank to disburse the funds to dece-

dent's estate, because: (1) the trust agreement established a valid tentative trust under the common law; (2) upon creation of the trust each beneficiary received a present vested interest; and (3) upon the death of two of the three beneficiaries, their vested interests passed to their respective heirs, meaning each beneficiary received one-third of the assets.

Appeal by Plaintiff from order entered 21 October 1999 by Judge James D. Llewellyn in Lenoir County Superior Court. Heard in the Court of Appeals 20 February 2001.

*Gerrans, Foster & Sargeant, P.A., by William W. Gerrans, for plaintiff-appellant.*

*William D. Spence for defendants-appellees.*

HUDSON, Judge.

Lela B. Bland (decedent) died on 16 October 1998. Decedent's son, Marshall E. Bland (plaintiff), was appointed Administrator of decedent's estate. At the time of her death, decedent had funds in a savings account (the savings account) at Branch Banking & Trust Company (BB&T). The savings account had been opened on 13 March 1990. In connection with the savings account, decedent had signed and executed an instrument entitled "Discretionary Revocable Trust Agreement" (the trust agreement), also dated 13 March 1990. The trust agreement names decedent as trustee, and names her three sons as beneficiaries, all three of whom were living at the time: Marshall E. Bland, A. Frank Bland, and Charlie D. Bland. The trust agreement provides, in pertinent part:

The funds in the account indicated on the reverse side of this instrument, together with earnings thereon, and any future additions thereto are conveyed to the trustee as indicated for the benefit of the beneficiary as indicated. The conditions of said trust are: (1) The trustee is authorized to hold, manage, pledge, invest and reinvest said funds in his sole discretion; (2) The undersigned grantor reserves the right to revoke said trust in part or in full at any time and any partial or complete withdrawal by the original trustee if he is the grantor shall be a revocation by the grantor to the extent of such withdrawal, but no other revocation shall be valid unless written notice is given to the institution named on the reverse side of this card; . . . (4) This trust, subject to the right of revocation, shall continue for the life of the grantor and there-

after until the beneficiary is ____ [left blank] years of age, or until his death if he dies before such age, and then the proceeds may be delivered by the institution to the beneficiary, or to his heirs, or to the trustee on his or their behalf, and if the age of the beneficiary is not specified this trust is for twenty-one years.

At the time of decedent's death, plaintiff was the only one of the three named beneficiaries still living. The other two named beneficiaries, A. Frank Bland and Charlie D. Bland, were survived by their respective children. BB&T acknowledged the death of decedent and its obligation to pay the principal balance of the account plus interest. However, BB&T expressed to plaintiff that it was unable to determine the respective parties' entitlements to the funds. Therefore, on 14 May 1999, plaintiff filed a declaratory judgment action, naming as defendants BB&T, as well as the surviving children of A. Frank Bland and Charlie D. Bland (the individual defendants). The complaint seeks a declaratory judgment as to the rights and obligations of the parties, and specifically requests that the court instruct BB&T as to how it should distribute the funds in the account. BB&T and the individual defendants filed answers admitting each and every allegation of the complaint; thus, the pertinent facts are undisputed.

On 14 September 1999, plaintiff filed a motion for summary judgment pursuant to N.C.R. Civ. P. 56 (Rule 56). On 5 October 1999, the individual defendants also filed a motion for summary judgment pursuant to Rule 56. On 11 October 1999, plaintiff and the individual defendants appeared before the trial court for a hearing on the summary judgment motions. BB&T notified the parties that it would not appear at the hearing, and that it would distribute the funds as determined by the court. On 21 October 1999, the trial court entered an order setting forth nine findings, including a finding that decedent had opened the account with BB&T on 13 March 1990, and a finding that the residuary clause in decedent's will instructed that the residue of her property be distributed to her three sons. The order also sets forth two conclusions as a matter of law: (1) that the savings account at issue failed to comply with N.C.G.S. § 54B-130 (1999) ("Trust accounts") as that statute existed on 13 March 1990; and (2) that the funds in the savings account therefore became the property of decedent's estate upon her death and should be distributed in accordance with the residuary clause of her will. Thus, the order instructs BB&T to disburse the funds to decedent's estate, and further instructs the administrator of the estate to distribute one-third of the funds to the surviving children of A. Frank Bland, one-third to the surviving chil-

dren of Charlie D. Bland, and one-third to plaintiff, in accordance with the residuary clause of decedent's will. Plaintiff appeals from this order.

**[1]** On appeal, plaintiff raises six assignments of error. In his first and second assignments of error, plaintiff contends that the trial court was without authority to include findings and conclusions in its summary judgment order. Findings of fact and conclusions of law are not necessary in an order determining a motion for summary judgment. *See Mosley v. Finance Co.*, 36 N.C. App. 109, 111, 243 S.E.2d 145, 147, *disc. review denied*, 295 N.C. 467, 246 S.E.2d 9 (1978). "However, such findings and conclusions do not render a summary judgment void or voidable and may be helpful, if the facts are not at issue and support the judgment." *Id.* In the instant case, the findings in the order appear after an introductory statement that "[t]he following are material facts which are not at issue and upon which the Court has based its decision." The inclusion of such undisputed material facts does not constitute error since the order makes clear that the findings were merely a summary of the material facts not at issue which justified entry of judgment. *See Trust Co. v. Broadcasting Corp.*, 32 N.C. App. 655, 658, 233 S.E.2d 687, 689, *disc. review denied*, 292 N.C. 734, 235 S.E.2d 788 (1977). Furthermore, given the nature of this case, we believe the inclusion of the undisputed material facts and the trial court's conclusions provides helpful guidance for this Court in reviewing the Rule 56 order. Plaintiff's first and second assignments of error are overruled.

Plaintiff's four remaining assignments of error all essentially challenge the trial court's two conclusions of law: that decedent's savings account failed to comply with G.S. § 54B-130 as it existed on 13 March 1990, and that the funds in the account became the property of decedent's estate upon her death to be distributed in accordance with the residuary clause of her will. We therefore turn to an examination of whether the trial court's legal conclusions, and its order, were in accordance with applicable law.

**[2]** Plaintiff contends that decedent established a valid trust pursuant to either G.S. § 54B-130 or the common law. In general, when a savings account is established by a grantor to be held by the grantor as trustee for the benefit of another, the resulting trust is referred to as a "tentative trust" or a "Totten Trust." *See Baker v. Cox*, 77 N.C. App. 445, 446, 335 S.E.2d 71, 72 (1985), *disc. review denied*, 315 N.C. 389, 338 S.E.2d 877 (1986). North Carolina has expressly recognized such trusts, established at savings and loan associations, provided

that the trust conforms with the statutory provisions set forth in
G.S. § 54B-130. *Id.* Among the many requirements set forth in G.S.
§ 54B-130, the person establishing the account must "execute a
written agreement with the association containing a statement that
it is executed pursuant to the provisions of this subsection." G.S.
§ 54B-130. The statute also limits the number of beneficiaries to "not
more than one person." *Id.* Furthermore, the statute requires that:

> The person establishing an account under this subsection shall
> sign a statement containing language set forth in a conspicuous
> manner and substantially similar to the following: . . .
>
> I understand that by establishing a trust account under the provi-
> sions of North Carolina General Statute 54B-130(a) that:
>
> 1. During my lifetime I may withdraw the money in the account;
> and
>
> 2. By written direction to the savings and loan association . . . I
> may change the beneficiary; and
>
> 3. Upon my death the money remaining in the account will
> belong to the beneficiary, and the money will not be inherited by
> my heirs or be controlled by my will.

*Id.* The trust agreement here does not reference G.S. § 54B-130; it pur-
ports to name three beneficiaries rather than one; and it does not con-
tain provisions substantially similar to either the change of benefi-
ciary provision, or the provision that the funds in the account are not
to be inherited by the grantor's heirs or controlled by the grantor's
will. Thus, the purported trust agreement does not comply with G.S.
§ 54B-130.

> However, G.S. § 54B-130 itself states in subdivision (a1):
>
> This section shall not be deemed exclusive. Deposit accounts
> not conforming to this section shall be governed by other appli-
> cable provisions of the General Statutes or the common law, as
> appropriate.

*Id.* As there are no other provisions of the General Statutes applica-
ble to tentative trusts established at a savings and loan association,
the issue is whether the trust agreement created a valid trust pur-
suant to the common law.

Defendants argue that a valid trust was not created by the trust
agreement. Defendants rely primarily on two cases which have held

that a valid trust requires the transfer of a "present beneficial interest." In *Wescott v. Bank*, 227 N.C. 39, 40 S.E.2d 461 (1946), the decedent had deposited money in a bank account with written instructions to the bank as follows: "I would like to make this an 'in trust for' account so I am the only person who can withdraw from it. In case I become deceased I would like to make an agreement with you so as to make my beneficiary my grandfather . . . eligible to receive the money." *Id.* at 41, 40 S.E.2d at 462. The Court held that, since there was no evidence of a transfer of a "present beneficial interest" in the deposit, no trust was created. *Id.* at 43, 40 S.E.2d at 463. The Court explained this holding as follows:

> An express trust has been defined as "a fiduciary relationship with respect to property, subjecting the person by whom the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it." . . . To constitute this relationship there must be a transfer of the title by the donor or settlor for the benefit of another. The gift must be executed rather than executory upon a contingency.

*Id.* at 42, 40 S.E.2d at 462-63 (citations omitted). Thus, the fact that the depositor directed that his grandfather was to have the money at the death of the depositor was insufficient to create a valid trust because title to the property had not been transferred by the deceased to a trustee to hold for the benefit of the intended beneficiary.

This Court reached a similar result in *Kyle v. Groce*, 50 N.C. App. 204, 272 S.E.2d 609 (1980). In *Kyle*, the decedent's application for a savings account with a savings and loan association contained the following statement under the decedent's name on the signature card: "Payable to Rose Z. Weaver, as survivor only." *Id.* at 205, 272 S.E.2d at 609. We held that "there was no evidence of a transfer or assignment of a present beneficial interest but only the expression of a desire that [Rose Z. Weaver] own the account at the death of the [decedent]." *Id.* at 205, 272 S.E.2d at 610. Thus, a valid trust was not created.

Defendants contend "[t]hese cases were based on common law principals which bar testamentary dispositions in the form of trusts unless the Wills Act is complied with," and further that these cases control the outcome in the instant case. However, defendants' assertion that testamentary dispositions must comply with the Wills Act, while correct, merely begs the question presented here: whether the

BLAND v. BRANCH BANKING & TR. CO.

[143 N.C. App. 282 (2001)]

disposition was, in fact, "testamentary" in nature. A testamentary disposition is defined as a disposition that does not take effect until the testator's death. *See, e.g., In re Seymour's Will,* 184 N.C. 418, 114 S.E. 626 (1922); *In re Will of Thompson,* 196 N.C. 271, 145 S.E. 393 (1928). Stated in the converse, a disposition that transfers a present beneficial interest is, by definition, not testamentary in nature. Thus, if the trust agreement in the instant case failed to transfer a present beneficial interest, and took effect only upon decedent's death, then the disposition was testamentary and must fail for not complying with the Wills Act. On the other hand, if the trust agreement transferred some present beneficial interest at the time it was created, then it was not testamentary in nature and may constitute a valid trust.

In *Ridge v. Bright,* 244 N.C. 345, 93 S.E.2d 607 (1956), our Supreme Court held that an *inter vivos* trust established by a grantor for the benefit of another, in which the grantor names herself as trustee, is a valid trust, and that such an instrument is not testamentary despite the fact that the legal title to the property in trust is not to pass to the beneficiary until the death of the grantor. *Id.* at 352-53, 93 S.E.2d at 612-13. This is because such an instrument causes the immediate transfer of a "non-possessory interest" to the beneficiary. *Id.* at 352, 93 S.E.2d at 613. This non-possessory interest is the "present beneficial interest" described by the Court in *Wescott* that vests in a beneficiary when title to the trust property is transferred to the trustee who becomes subject to equitable duties to deal with the property for the benefit of the beneficiary. The Court in *Ridge* explained that such a trust may provide that the grantor will be entitled to possession of the property for life, or that the grantor shall be a life beneficiary of the trust. *Id.* The Court also explained that neither the reservation of a power to revoke the trust and take back the property, nor the retention of a power to modify the trust and change the beneficiaries, makes the instrument testamentary. *Id.* Rather, such provisions merely show that the present interest passing to the beneficiary is subject to divestment at the hands of the grantor. *Id.*

Here, decedent transferred title to the savings account to herself as trustee, subjecting herself as trustee to equitable duties to deal with the property for the benefit of the named beneficiaries. Thus, there was a transfer of a present beneficial interest such that the instrument was not testamentary in nature. Furthermore, the instrument satisfied the three elements necessary to establish a valid trust: (1) sufficient words to show intention to create the trust; (2) a

definite subject; and (3) an ascertained object. *See, e.g., Finch v. Honeycutt,* 246 N.C. 91, 97 S.E.2d 478 (1957). The instrument unequivocally manifests decedent's intention to create a trust. The trust property, consisting of the savings account, was clearly identified and was transferred into the custody of the trustee and the duties and powers of the trustee with respect to the trust assets were expressly defined. The beneficiaries were clearly designated and their respective interests were expressly set forth.

[3] Having determined that the trust agreement in question established a valid trust pursuant to the common law, the issue then becomes how the assets in the savings account should be distributed given that two of the three named beneficiaries pre-deceased decedent. The trust agreement, as we have stated, transferred a present beneficial interest, which interest vested in the beneficiaries upon the execution of the trust agreement. The interest was vested, rather than contingent, because the right of the beneficiaries to the savings account assets at the death of decedent did not depend upon the happening of some future, contingent event. From the very instant of the execution of the trust agreement, the possession of the trust assets by the beneficiaries was capable of taking effect upon the death of decadent. *See Power Co. v. Haywood,* 186 N.C. 313, 119 S.E. 500 (1923); *Canoy v. Canoy,* 135 N.C. App. 326, 520 S.E.2d 128 (1999). Because the interests were vested, they passed to the heirs and descendants of each deceased beneficiary upon each beneficiary's death. *See, e.g., Richardson v. Richardson,* 152 N.C. 705, 707, 68 S.E. 217, 218 (1910) (holding that person entitled to vested remainder has immediate fixed right of future enjoyment, and that such an estate may be transferred or alienated). Thus, upon the death of decedent, one-third of the assets in the savings account passed to plaintiff, one-third of the assets passed to the surviving heirs of A. Frank Bland, and one-third of the assets passed to the surviving heirs of Charlie D. Bland. We believe this result is consistent with the terms of the trust agreement itself ("This trust . . . shall continue for the life of the grantor and thereafter until the beneficiary is [twenty-one] years of age, or until his death if he dies before such age, and then the proceeds may be delivered by the institution to the beneficiary, *or to his heirs*") and with the common law of vested interests. We also believe this result, pursuant to which the trust account will be distributed in the same manner as the residuary assets under decedent's will, is the result intended by decedent. We also note that this is the result reached by various courts in other jurisdictions addressing similar circum-

stances. *See Detroit Bank and Trust Co. v. Grout*, 95 Mich.App. 253, 289 N.W.2d 898 (1980) (holding revocable *inter vivos* trust, which named trust company as trustee, provided grantor life estate in assets, and named president of trust company as beneficiary for one-twelfth of assets, created "vested remainder interest" in beneficiary upon creation of trust which passed to heirs of beneficiary at beneficiary's death prior to grantor, and entitled heirs to one-twelfth of trust property at death of grantor); *First Nat. Bank of Bar Harbor v. Anthony*, 557 A.2d 957 (Me., 1989) (holding revocable *inter vivos* trust, which provided income from account to grantor for life, followed by life estate to grantor's wife of income from account, and which named three grandchildren of grantor as beneficiaries of trust assets, created vested interests in grandchildren which passed to heirs of one grandchild when grandchild predeceased grantor); *First Nat. Bank of Cincinnati v. Tenney*, 165 Ohio St. 513, 138 N.E.2d 15 (1956) (holding revocable *inter vivos* trust, which named bank as trustee, provided grantor life estate in trust income, and named grantor's sister as beneficiary, created vested remainder interest in beneficiary which passed to defendant by bequeath in beneficiary's will upon death of beneficiary prior to death of grantor, entitling defendant to trust property at grantor's death); *First Galesburg National Bank & Trust Co. v. Robinson*, 149 Ill.App.3d 584, 102 Ill.Dec. 894, 500 N.E.2d 995 (1986) (holding revocable *inter vivos* trust, providing proceeds from family business to grantors for life, naming bank as trustee, and naming grantors' two sons as beneficiaries, created in each son a vested interest in the remainder upon creation of trust, which vested interest was subject to descent or devise and therefore passed to heirs of one son who predeceased grantors).

In sum, we agree with the trial court's preliminary conclusion of law that the savings account at issue failed to comply with G.S. § 54B-130 as that statute existed on March 30, 1990. However, we reverse the trial court's second conclusion of law that the funds in the savings account therefore became the property of decedent's estate upon her death and should be distributed in accordance with the residuary clause of her will. We also reverse the trial court's instruction to BB&T to disburse the funds to decedent's estate. We hold that the trust agreement established a valid tentative trust under the common law. We hold that upon creation of the trust, each beneficiary received a present vested interest, and that, upon the death of A. Frank Bland, and upon the death of Charlie D. Bland, their vested interests passed to their respective heirs. Thus, upon the death of

decedent, the trust assets, passing outside of decedent's estate, should be distributed by BB&T as follows: one-third of the assets to plaintiff, one-third of the assets to the surviving heirs of A. Frank Bland, and one-third of the assets to the surviving heirs of Charlie D. Bland. We reverse and remand for the trial court to enter conclusions of law and instructions to the parties consistent with this opinion.

Reversed.

Judges GREENE and McCULLOUGH concur.