DIETZ, Judge.
*448 Shortly before he died, James Nelson called his account representative at the State Employees' Credit Union ("SECU") and told her he wanted to move $85,000 from his revocable living trust to a new account with only one of his three children as the beneficiary. The credit union prepared the paperwork for a statutory "Payable on Death" account to achieve Mr. Nelson's wishes. After his death, the credit union transferred *449 the funds to Mr. Nelson's daughter, whom he had identified as the beneficiary of the Payable on Death account.
Mr. Nelson's other two children then sued, arguing, among other things, that Mr. Nelson and SECU had failed to comply with the statutory requirements for creating a Payable on Death account. The trial court agreed and entered partial summary judgment in Plaintiffs' favor on that issue. But the trial court later entered summary judgment in SECU's favor, and dismissed all of Plaintiffs' claims, on the ground that Mr. Nelson, while not complying with the Payable on Death statutory requirements, had nevertheless created a valid common law tentative or "Totten" trust that had the same effect.
Plaintiffs argue on appeal that the Payable on Death statute supplanted and eliminated the common law of tentative or Totten trusts and that, in any event, Mr. Nelson's actions were insufficient to establish a common law tentative trust.
As explained below, we reject these arguments. As we have previously held, a grantor who sought to create a statutory Payable on Death account but failed to satisfy the statutory criteria may rely on the common law to demonstrate the existence of a valid tentative or Totten trust as an alternative. The General Assembly expressly envisioned this outcome when it provided that the statute was not exclusive and that common law remedies were preserved.
Here, undisputed evidence in the record shows that Mr. Nelson expressed his intent *337 to place $85,000 in a tentative trust with his daughter as the beneficiary. Although the document Mr. Nelson signed described itself as a "Payable on Death" account and not a trust, this Court has held that an instrument need not contain the word "trust" in order to create a valid trust. Because Mr. Nelson satisfied the legal requirements for creation of a tentative trust, we affirm the trial court's judgment.
Facts and Procedural History
On 3 October 2008, James Nelson, father of Plaintiffs Bruce Nelson and Jan MacInnis, telephoned his local State Employees' Credit Union branch in Boone and requested to move $85,000 out of his accounts within his revocable living trust and place the funds in a new account with his other daughter, Martha Brown, as beneficiary. Mr. Nelson spoke with Ellen Shook, a financial services officer at the Boone branch. Ms. Shook previously had done business with Mr. Nelson over the phone and recognized his voice. She collected the necessary information to open a statutory "Payable on Death" account and filled out the required account *450 processing form. The form identified the new account as a "Payable on Death" account and stated that Martha Brown was the " beneficiary."
Ms. Shook informed Mr. Nelson that his signature was required on the account form and that she would mail him the form to sign. The signature line on the form indicated that Mr. Nelson had received and read a copy of the Rules and Regulations governing the account, but Ms. Shook admitted she did not mail Mr. Nelson a copy of the Rules and Regulations. Nevertheless, Nelson signed the form and mailed it back within a few days.
After Mr. Nelson passed away, SECU informed Martha Brown that the account had transferred to her, and Ms. Brown withdrew the $85,000.
Plaintiffs, who are Ms. Brown's brother and sister, then sued her, alleging that she breached her fiduciary duties to her father and his estate. Plaintiffs later filed an amended complaint adding SECU as a party and alleging negligence and wanton disregard of the rights of the deceased and his rightful heirs, fraud, constructive fraud, unfair and deceptive trade practices, and conversion.
On 28 October 2010, the trial court, the Honorable Marvin K. Blount, III, presiding, granted partial summary judgment for Plaintiffs, ruling "that SECU violated N.C. Gen.Stat. § 54-109.57 and failed to create a right of survivorship in defendant Martha Nelson Brown to the proceeds of the 'payable on death' account." SECU appealed this ruling, but this Court dismissed the appeal as interlocutory. Nelson v. Brown, 217 N.C.App. 400, 720 S.E.2d 30 (2011). The case continued in the trial court.
On 4 August 2014, SECU filed a motion for summary judgment arguing that, despite the trial court's ruling that it failed to comply with the Payable on Death statute, SECU was entitled to judgment because Mr. Nelson's actions created a common law tentative or Totten trust. On 27 August 2014, the trial court, the Honorable Allen Baddour, presiding, granted summary judgment in favor of SECU. Plaintiffs timely appealed this second summary judgment order, and SECU cross-appealed the first summary judgment order.
Analysis
The trial court entered summary judgment for SECU on the ground that Mr. Nelson placed his SECU deposit account in a common law tentative or "Totten" trust with his daughter Martha Brown as beneficiary. Thus, the court found that Plaintiffs could not prevail on their tort claims because SECU properly transferred the assets in the deposit account to Ms. Brown upon Mr. Nelson's death.
*451 Plaintiffs challenge the trial court's holding on three grounds. First, Plaintiffs argue that the court's second summary judgment ruling impermissibly overturned its first summary judgment ruling in favor of Plaintiffs. Second, Plaintiffs argue that the statutory Payable on Death account is the exclusive means to form a tentative trust in North Carolina, supplanting the common law. Finally, Plaintiffs argue that SECU failed to show that Mr. Nelson created a common law tentative trust as a matter of law. For the *338 reasons discussed below, we reject each of these arguments.
I. One Superior Court Judge Overruling Another
Plaintiffs first argue that Judge Baddour's summary judgment ruling impermissibly overruled an earlier summary judgment ruling by Judge Blount. We disagree.
It is well-settled that "no appeal lies from one Superior Court judge to another; that one Superior Court judge may not correct another's errors of law; and that ordinarily one judge may not modify, overrule, or change the judgment of another Superior Court judge previously made in the same action." Smithwick v. Crutchfield, 87 N.C.App. 374, 376, 361 S.E.2d 111, 113 (1987) (quoting Calloway v. Ford Motor Co., 281 N.C. 496, 501, 189 S.E.2d 484, 488 (1972) ).
Judge Blount's 28 October 2010 partial summary judgment order concerned only one issue: whether SECU "violated N.C. Gen.Stat. § 54-109.57 and failed to create a right of survivorship in defendant [Ms.] Brown." Judge Blount held that, based upon the evidence before him and the arguments of counsel, SECU had indeed violated N.C. Gen.Stat. § 54-109.57.
Later, in its 4 August 2014 motion for summary judgment, SECU argued that, notwithstanding Judge Blount's statutory ruling, SECU was entitled to summary judgment on its common law theory:
Regardless of the answer to [the] question [of whether SECU violated N.C. Gen.Stat. § 54-109.57 ], summary judgment is appropriate for SECU because (i) N.C. Gen.Stat. § 54-109.57 is not the sole legal way to convey a future interest in a share term certificate; and (ii) James Nelson gave a valid contingent future interest in the share term certificate at issue to Martha Brown.
During the hearing on SECU's motion for summary judgment, Judge Baddour discussed Judge Blount's partial summary judgment order:
*452 I don't hear an argument from [SECU] that, in fact, I should find that it did comply with the statute. I think they accept ... that that is the law in this case. I think the argument is that-their argument is that let's draw two circles and that-what they did does not fit in the circle that is the statute, but is in a broader circle that would allow it to be legal for other reasons. So, I appreciate that Judge Blount's ruling is the law of the case, and I'm not going to find that [SECU] complied with the statute by having the language in there and all those things; that's not the question before me.... I am bound by Judge Blount's ruling. I'm convinced I am.
In sum, SECU did not argue that Judge Blount's partial summary judgment order was erroneous, and Judge Baddour did not find that it was, nor did he overrule that earlier order. Instead, SECU argued that, notwithstanding its violation of N.C. Gen.Stat. § 54-109.57, it could still prevail on its common law theory. Judge Baddour's summary judgment ruling was based on that argument, not the statutory argument previously considered by Judge Blount. Accordingly, we reject Plaintiffs' argument that one superior court judge improperly overruled another in this case.
II. Statutory Preemption of the Common Law of Tentative Trusts
Plaintiffs next argue that the statutory Payable on Death account is the sole means by which a grantor can create an account that will pass to a named beneficiary upon the death of the grantor. Plaintiffs contend that the statute effectively superseded the common law of tentative or Totten trusts. We disagree.
Ordinarily, when the General Assembly "legislates with respect to the subject matter of any common law rule, the statute supplants the common law rule and becomes the law of the State." Virmani v. Presbyterian Health Servs. Corp., 350 N.C. 449, 473, 515 S.E.2d 675, 691 (1999). Here, the Payable on Death statute creates a statutory vehicle to create the same beneficiary rights in a deposit account that can be created through a common law tentative or Totten trust. Indeed, this Court has referred to the *339 statutory Payable on Death accounts as a statutory "Totten" trust. See Estate of Redden ex rel. Morley v. Redden, 179 N.C.App. 113, 119, 632 S.E.2d 794, 799 (2006).
But the General Assembly can choose not to supplant the common law when it legislates, see, e.g., State ex rel. Long v. ILA Corp., 132 N.C.App. 587, 601, 513 S.E.2d 812, 821 (1999), and that is precisely what it *453 did here. The Payable on Death statute provides as follows: "This section shall not be deemed exclusive. Deposit accounts not conforming to this section shall be governed by other applicable provisions of the General Statutes or the common law, as appropriate." N.C. Gen.Stat. § 54-109.57(a1) (2013).[1] thus, the general assembly expressed a cleAR INTENT FOR THE PAYABLE on Death statute to supplement, not to supplant, the existing common law of trust formation.
In an analogous context, we have previously addressed this issue and held that the Payable on Death statute exists as an alternative to the common law. See Bland v. Branch Banking & Trust Co., 143 N.C.App. 282, 285, 547 S.E.2d 62, 65 (2001). In Bland, the Court addressed whether the Payable on Death statute applicable to savings and loan associations supplanted the common law. That statute is substantively identical to the Payable on Death statute governing credit unions, which is at issue in this case. Compare N.C. Gen.Stat. § 54B-130 with N.C. Gen. Stat. N.C. Gen.Stat. § 54-109.57.[2] Both statutes have the identical language providing that the statute "shall not be deemed exclusive" and that non-conforming accounts are governed by "the common law, as appropriate." N.C. Gen.Stat. § 54B-130(a)(1) ; N.C. Gen.Stat. § 54-109.57(a)(1).
The grantor in Bland failed to sign a statement containing the necessary statutory language-the same statutory error that Plaintiffs alleged in this case-and failed to comply with the statute in several other ways. This Court acknowledged that "the purported trust agreement does not comply with G.S. § 54B-130" but held that, because of the non-exclusive language in the statute, "the issue is whether the trust agreement created a valid trust pursuant to the common law." Bland, 143 N.C.App. at 286, 547 S.E.2d at 65. In other words, this Court held that the common law is available as an alternative to the Payable on Death statute.
In sum, the Payable on Death statute is not the exclusive means by which a grantor can create an account that will pass to a named beneficiary upon the death of the grantor. To be sure, the statutory method will be preferable in nearly every instance, because it lists specific steps that ensure creation of the Totten trust and thus provides certainty to all parties involved. See N.C. Gen.Stat. § 54-109.57A (the Payable on Death *454 statute for credit unions). But as this Court held in Bland, the General Assembly chose not to supplant the existing common law trust options when it enacted the statute. As a result, a grantor who sought to create a statutory Payable on Death account but failed to satisfy the statutory criteria may rely on the common law to demonstrate the existence of a valid tentative or Totten trust as an alternative. Accordingly, we reject Plaintiffs' argument.
III. Creation of a Tentative or Totten Trust
Finally, Plaintiffs argue that SECU failed to show that Mr. Nelson established a common law tentative trust for his deposit account.
To create a tentative or Totten trust, the grantor must satisfy the same criteria necessary to establish any other valid trust: "(1) sufficient words to show intention to create the trust; (2) a definite subject; and (3) an ascertained object." Bland, 143 N.C.App. at 288-89, 547 S.E.2d at 67. The distinguishing feature of a tentative trust is that "the depositor retains complete control over the funds until his death, the trust is *340 fully revocable, and is revoked in part each time the settlor withdraws funds from the account." Jimenez v. Brown, 131 N.C.App. 818, 824-25, 509 S.E.2d 241, 246 (1998) ; see also Bland, 143 N.C.App. at 285, 547 S.E.2d at 65.
We hold that SECU presented undisputed evidence demonstrating that Mr. Nelson created a common law tentative trust as a matter of law. Mr. Nelson signed a bank form indicating that he was creating a "Payable on Death" account in which his daughter Martha Brown was the beneficiary. Ellen Shook, the SECU employee who handled Mr. Nelson's Payable on Death account request, testified that Mr. Nelson called her and told her that he wanted to create a new account "with his daughter [Martha Brown] as beneficiary." Mr. Nelson's assets with SECU were all within a revocable living trust, and he explained to Ms. Shook that he wanted to move $85,000 from that trust into a separate one with Ms. Brown as the beneficiary. Thus, Mr. Nelson expressed his intent to create a trust, identified the specific sum of money to be placed into the trust account, and identified the beneficiary of the trust.
To be sure, the document that Mr. Nelson signed did not use the word "trust" because that form was intended to be used to create a statutory Payable on Death account, not a common law one. But this Court has held that it is not necessary to use the word "trust" in order to satisfy the three elements of a valid trust. See Carver v. Carver, 188 N.C.App. 164, 654 S.E.2d 833 (2008). The text of the form, together with *455 Mr. Nelson's instructions to SECU concerning his intent, are sufficient to satisfy the requirements for creation of a valid tentative trust account.
Plaintiffs also argue that Mr. Nelson's actions were testamentary and that he never passed a present beneficial interest to his daughter as required for formation of a valid trust. This argument is precluded by Bland. In Bland, the plaintiff argued that the transfer of funds would occur only upon the grantor's death, and therefore the trust agreement "failed to transfer a present beneficial interest." 143 N.C.App. at 288, 547 S.E.2d at 66. This Court rejected that argument, holding that an instrument that transfers a "non-possessory interest" can still satisfy the requirement of transferring a "present beneficial interest." Id. "[A] trust may provide that the grantor will be entitled to possession of the property for life, or that the grantor shall be a life beneficiary of the trust" and "neither the reservation of a power to revoke the trust and take back the property, nor the retention of a power to modify the trust and change the beneficiaries, makes the instrument testamentary." Id.
Here, as in Bland, Mr. Nelson transferred a non-possessory interest to his daughter, the beneficiary of the tentative trust. Mr. Nelson retained "complete control over the funds until his death," but that is the nature of a tentative trust and it does not change the fact that the grantor of such a trust transfers a non-possessory beneficial interest upon creation of the trust. Jimenez, 131 N.C.App. at 824-25, 509 S.E.2d at 246 ; see also Bland, 143 N.C.App. at 288, 547 S.E.2d at 66-67.
In sum, the undisputed record evidence established that Mr. Nelson placed $85,000 in a valid tentative trust with his daughter, Martha Brown, as beneficiary. As a result, SECU properly transferred those funds to Ms. Brown upon Mr. Nelson's death, and Plaintiffs' tort claims-which all depended on SECU wrongfully transferring those funds-fail as a matter of law. The trial court thus correctly entered summary judgment in SECU's favor on those claims. Because we affirm the trial court's final judgment on this basis, we need not address SECU's alternative arguments in its cross-appeal.
Conclusion
The judgment of the trial court is affirmed.
AFFIRMED.
Judges BRYANT and STEPHENS concur.

Although this case involves now-repealed N.C. Gen.Stat. § 54-109.57, the same language is found in the current version of the Payable on Death statute at N.C. Gen.Stat. § 54-109.57A(b).

Again, these statutes have since been repealed and re-enacted as N.C. Gen.Stat. § 54B-130.1 and N.C. Gen.Stat. § 54-109.57A, respectively. The relevant statutory language remains the same.