Chester P. DEPTULA, Jr. and Carol A. Deptula, husband and wife, Appellants,

v.

Beth SIMPSON, individually; Dynamic Properties, a business entity; The Estate of Ida M. Johnson; Gloria Williams, individually and as personal representative of the Estate of Ida M. Johnson, Appellees.

No. S–11948.

Supreme Court of Alaska.

July 27, 2007.

Laurel J. Peterson, Law Offices of Laurel J. Peterson, Anchorage, for Appellants.

Erin B. Marston and Colleen J. Moore, Marston & Cole, P.C., Anchorage, for Appellees The Estate of Ida M. Johnson and Gloria Williams, Personal Representative.

Brewster H. Jamieson and Andrea E. Girolamo–Welp, Lane Powell LLC, Anchorage, for Appellees Beth Simpson and Dynamic Properties.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

This case involves a dispute arising out of a home sale. Before purchasing the house, the buyers waived their right to receive statutory disclosures about the house. Shortly after moving in, the buyers learned that the previous owner had died and partially decomposed in the house and that this decomposition had caused damage to the kitchen subfloor. The buyers brought suit against the seller and her listing agent, alleging breach of a duty to disclose the fact that the previous owner had died and decomposed in the house. The superior court dismissed the claims against the seller on summary judgment, holding that the seller had no duty to disclose. Because we agree with the superior court that the buyers waived their statuto-

ry right to disclosure, and because the seller made no misrepresentations that triggered a common law duty to disclose, we affirm the superior court's grant of summary judgment. We need not address whether the listing agent owed the buyers a duty of disclosure because we conclude that the listing agent is not properly before this court on appeal.

## II. FACTS AND PROCEEDINGS

### A. Facts

Ida Mae Johnson owned a home at 1800 Bannister Drive in Anchorage (the Bannister house). In April 2003 police discovered Ms. Johnson's body in the kitchen of the home. Ms. Johnson had died of a heart attack approximately one month before her body was discovered, and during that time her body had partially decomposed. It was later learned that fluids released during decomposition caused structural damage to the kitchen subfloor.

Ms. Johnson had two daughters, Gloria Williams and Veronica Johnson, both of whom lived outside Alaska at the time of Ms. Johnson's death. Williams took charge in dealing with her mother's affairs. Williams learned from a police officer that her mother's body "had been decomposing" when it was discovered and that clean-up at the Bannister house was needed. Family friends cleaned the Bannister house after Ms. Johnson's body had been removed and before Williams returned to Anchorage for her mother's funeral. The friends did not describe what they had seen in the kitchen to Williams and nothing in the record suggests that Williams knew that the decomposition of her mother's body had caused structural damage to the kitchen subfloor.

Williams was appointed the Personal Representative of her mother's estate. In her capacity as personal representative, Williams hired real estate broker Dynamic Properties and its agent Beth Simpson (collectively Simpson) to assist with the listing and sale of the Bannister house. Although Williams in-

formed Simpson that her mother had died of a heart attack inside the house, she did not tell her the details surrounding her mother's death and Simpson did not inquire further. Nothing in the record suggests that Simpson knew that events connected to Ms. Johnson's death had caused structural damage to the Bannister house.

The Deptulas, through their buying agent Dall Realty,[1] expressed interest in the Bannister house and negotiated with Simpson about the price and terms of the sale. Although the Deptulas understood that the house was being sold by Ms. Johnson's estate, they did not inquire about the circumstances of Ms. Johnson's death. The Deptulas viewed the Bannister home two times, including a walk-through with a professional inspector, before agreeing to the terms of a sale. At no point during negotiations did the Deptulas have direct contact with Williams.

When Williams and the Deptulas, acting through their agents, agreed on the terms of the sale, they executed an "Earnest Money Agreement" that included an "as is" clause.[2] Williams and the Deptulas also executed a "Waiver By Agreement" form that released the Estate, as the seller of the residence, from its obligation to make statutorily mandated disclosures about the house. Because of the waiver, Williams did not fill out a disclosure statement documenting the condition of the Bannister house.

Shortly after moving into the Bannister house, the Deptulas investigated a suspicious stain under the kitchen stove and discovered blood and urine. They later removed tiles from the kitchen floor and discovered that blood and other fluids had saturated and damaged the subfloor.

### B. Proceedings

The Deptulas sued Williams—in both her individual capacity and as personal representative of her mother's estate—and Simpson

---

1. The Deptulas settled their claims against Dall Realty and therefore Dall is not a party to this appeal.

2. The clause reads: "The Buyer understands that this property is being sold in its present ('as is') condition and no further repairs will be considered except as allowed in paragraph 5 of this addendum."

in February 2004. The Estate filed for summary judgment in October 2004. The Deptulas responded with a cross-motion for partial summary judgment against the Estate, which both the Estate and Simpson opposed. The superior court determined that the Deptulas were unable to establish the source of any duty to disclose: The Deptulas had waived their right to receive statutory disclosures about the Bannister house and the Deptulas could not point to any misleading statements or special relationships that created a common law duty to disclose. Accordingly, the superior court granted the Estate's motion for summary judgment and denied the Deptulas' motion.

In its decision, the superior court used broad language that appeared to grant summary judgment to Simpson on the Deptulas' claims against Simpson, even though Simpson had not moved for summary judgment.[3] The Deptulas subsequently requested final judgment (against themselves) under Alaska Civil Rule 54(b) covering *all* of their claims against *all* defendants. Simpson filed a non-opposition. The court then granted a Rule 54(b) final judgment to the Estate only and made clear that "the Court has not entered summary judgment against the other defendants [*i.e.*, Simpson]." The Deptulas moved for reconsideration, suggesting that Simpson's non-opposition to the Deptulas' request for final judgment justified granting final judgment as to Simpson. Upon reconsideration, the superior court issued a judgment that dismissed the Deptulas' causes of action against Simpson and stated that the judgment "disposes of the causes of action against all remaining defendants."

The Deptulas appeal.

## III.  STANDARD OF REVIEW

■ We review a superior court's grant of summary judgment *de novo* "to determine whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law."[4] "Whether a party has a duty of care and, if so, the nature and scope of that duty are questions of law that we also review de novo."[5]

## IV.  DISCUSSION

### A.  Simpson Is Not Properly Before this Court on Appeal.

■ The Deptulas and Simpson dispute the legal significance of the superior court's dismissal of the claims against Simpson. The Deptulas argue that the order is an appealable final judgment that encompasses their claims against Simpson. Simpson responds that the order describes an unappealable voluntary dismissal. We agree with Simpson.

■ Our appellate jurisdiction is limited. Alaska Rule of Appellate Procedure 202(a) requires a final judgment before we may exercise appellate review of a case filed in the superior court. Where less than all claims in a given case have been resolved, Alaska Civil Rule 54(b) provides a mechanism by which the superior court may direct the "entry of final judgment as to one or more but fewer than all of the claims or parties. . . ." Where a Rule 54(b) final judgment has been granted, a party may appeal those claims covered by the judgment while pursuing its remaining claims in the superior court.[6] Where, however, a case is dismissed voluntarily, no appeal may be taken.[7] This is

---

**3.**  When the superior court granted the Estate's motion for summary judgment, which Simpson had not joined, the court's order discussed not only whether the Estate owed the Deptulas a duty of disclosure, but also whether Simpson owed such a duty. The court's opinion concluded, "Neither the estate, Williams, Simpson nor Dynamic Properties owed the Deptulas a statutory or common law duty of care that required them to disclose the information they did not disclose." This sentence led to some confusion about the status of claims against Simpson.

**4.**  *Bryson v. Banner Health Sys.*, 89 P.3d 800, 803 n. 4 (Alaska 2004).

**5.**  *Id.*

**6.**  Alaska R. Civ P. 54(b)

**7.**  *See Legge v. Greig*, 880 P.2d 606, 607–08 (Alaska 1994) (holding that acquiescing in dismissal with prejudice waives right to appeal).

so because voluntarily dismissal, when approved by the court, is considered a consent judgment, which is generally not subject to appellate review.[8]

■ We conclude that the Deptulas failed to obtain an *appealable* final judgment covering their claims against Simpson because their motion practice resulted in the voluntarily dismissal of those claims. Although the superior court could have worded its original order granting summary judgment to the Estate more narrowly, the court explained in a subsequent order that its use of broad language in the summary judgment order did not address the merits of the Deptulas' claims against Simpson. The record makes clear that the Deptulas' claims against Simpson were not briefed by the parties and were not ruled on by the superior court. Neither Simpson's filing of a non-opposition nor Simpson's request for attorney fees under Alaska Civil Rule 68 required the court to adjudicate the claims against her.[9] When the Deptulas requested that the superior court issue a Rule 54(b) final judgment covering their unadjudicated claims against Simpson, the Deptulas in effect requested voluntary dismissal of those claims.

Because the Rule 54(b) final judgment voluntarily dismissed the Deptulas' unadjudicated claims against Simpson, the Deptulas' claims against Simpson are not properly before this court.[10]

### B. The Deptulas' Claims Against the Estate Are Precluded Because the Deptulas Waived Their Right to Disclosure.

■ The Deptulas argue that the superior court erred in concluding that the Estate did not owe them a duty to disclose the fact that Ms. Johnson died in the Bannister house. The Estate responds that the Deptulas waived any right to disclosure. We agree with the Estate.

Alaska Statutes 34.70.010–.200 govern disclosures in residential real property transfers. Under Chapter 70 a party selling residential real property is required to complete a disclosure form in good faith and deliver it to potential buyers.[11] The written disclosure statement requires disclosure on conditions ranging from "Roof or Other Leakage" to "Average Annual Utility Costs" to "Soil Stability."[12]

■ A buyer can choose to waive his or her right to receive the written disclosure statement from the seller. Under AS 34.70.110, the disclosure requirement "does not apply to the transfer of an interest in residential real property if the transferor and transferee agree in writing that the transfer will not be covered under this chapter." To facilitate such waivers, the disclosure form includes a page entitled "Waiver By Agreement." This page succinctly states the purpose for which it may be used: "If both parties agree to waive the requirement to complete this disclosure statement, please sign below."

■ To be enforceable, a waiver must meet certain requirements. The waiver must be knowing and voluntary.[13] Although

---

**8.** *See Harold's Trucking v. Kelsey*, 584 P.2d 1128, 1130 n. 3 (Alaska 1978) (citing *Gravel v. Alaskan Village, Inc.*, 409 P.2d 983, 986 (Alaska 1966)).

**9.** We attach no particular significance to Simpson's request for attorney's fees under Rule 68 because attorney's fees are available to a party whose opponent voluntarily dismisses its claims after rejecting an offer of settlement. *See Miklautsch v. Dominick*, 452 P.2d 438, 440 (Alaska 1969) ("All that is required to bring into play 'the offeree must pay the costs incurred after the making of the offer' portion of Civil Rule 68 is a recovery which falls short of the offer of judgment.").

**10.** We therefore decline to address whether separate duties of disclosure apply to a seller and a

listing agent, leaving this issue open for future resolution.

**11.** AS 34.70.010, .060.

**12.** *See* REAL ESTATE COMMISSION, STATE OF ALASKA RESIDENTIAL REAL PROPERTY TRANSFER DISCLOSURE STATEMENT, http://www.dced. state .ak.us/occ/pub/rec4229.pdf (last visited Nov. 27, 2006).

**13.** *See Blood v. Kenneth Murray Ins., Inc.*, 68 P.3d 1251, 1255 (Alaska 2003); *Powers v. United Servs. Auto. Ass'n*, 6 P.3d 294, 299 (Alaska 2000) (concluding no waiver occurred where appellee "cannot be said to have engaged in direct, unequivocal conduct that indicated its purpose to abandon its right to demand arbitration with [appellant]").

statutorily created rights can generally be waived, parties may not waive statutory rights "[where] a question of public policy is involved, or where rights of third parties, which the statute was intended to protect, are involved." [14]

The record here shows that the Deptulas' waiver of statutory disclosure was valid and enforceable. The Deptulas' own statements show that they understood they could walk away from the transaction if they were unwilling to waive their right to receive disclosure. Chester Deptula stated that he understood the legal effect of the waiver, namely that he would not be receiving disclosures about the condition of the Bannister house. The waiver form stated in unambiguous language that signatures by both parties would obviate the need to complete the form. [15] Further, public policy was not contravened by giving effect to the Deptulas' waiver. Both the legislature and the Real Estate Commission have voiced their approval of the use of waivers of statutory disclosure. [16] Indeed, Williams's own circumstances illustrate how waivers can promote alienability by allowing a party who may be incapable of warranting the condition of a home to avoid having to complete the disclosure form. Finally, third party rights are not affected because the terms of the real estate disclosure statutes protect only the purchaser, not the public at large.

■ The Deptulas' arguments for invalidating the waiver were not preserved in the superior court and in any event are unpersuasive. The Deptulas argue mutual mistake of fact, but they failed to raise this argument below. Accordingly, it is waived. [17] The Deptulas next rely on AS 34.70.060, which requires that disclosures be made in good faith. But this statute applies only to a "person who makes a disclosure ... under this chapter." Because the Estate did not make any disclosures, AS 34.70.060 is inapplicable.

In sum, the Deptulas' waiver of their right to receive statutory disclosures about the Bannister house was valid. [18] Because the Deptulas waived their right to statutory disclosure, their statutory claims against the Estate are precluded.

## C. The Estate Did Not Owe the Deptulas a Common Law Duty of Disclosure.

■ Relying on provisions of the Restatement (Second) of Torts (1977), the Deptulas argue that the Estate owed them a common law duty to disclose because the Estate made partial or misleading statements. This argument is unavailing.

The Restatement (Second) of Torts § 551 recognizes two situations pertinent to this case in which a duty to disclose material facts may arise: (1) where one party has made partial or misleading statements, and (2) where one party has a special relationship with the other party. [19]

14. *Ramsey v. City of Sand Point,* 936 P.2d 126, 130 (Alaska 1997).

15. *Cf. Wright v. Universal Mar. Serv. Corp.,* 525 U.S. 70, 77, 79–80, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998) (declining to give effect to union-negotiated waiver of employee's right to have employment discrimination claims heard in court because of contract's unclear language).

16. AS 34.70.110; REAL ESTATE COMMISSION, *supra* note 12, at 9.

17. *Padgett v. Theus,* 484 P.2d 697, 700 (Alaska 1971) ("Ordinarily an issue which was not raised in the trial court will not be treated on appeal.").

18. Because we conclude the waiver is valid, we need not address whether a seller must disclose the fact that a person died in the home being sold or whether disclosure of a death in a house is required under the Real Estate Commission's disclosure form. *Cf.* AS 08.88.615(c) (requiring that real estate licensee disclose murder or suicide that occurred on property within one year before date that licensee first showed real estate to buyer).

19. RESTATEMENT (SECOND) OF TORTS § 551 (1977) provides in relevant part:

(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

....

(b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

....

The provision governing partial or ambiguous statements recognizes a duty on the part of one making such statements to disclose "matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading."[20] This provision does not create a duty to disclose here because the record does not show that the Estate made any partial or ambiguous statements that were material to the transaction.[21] The Deptulas' realtor, Dall Realty, informed them that Williams did not feel comfortable filling out the disclosure statement because she did not live in the Bannister house. Assuming that Williams (or Simpsons, Williams's agent) made that statement to Dall, Williams's statement did not create a duty to disclose because it was not misleading. Williams had not lived in the house since 1985 and had not visited her mother there since 1999. The time that Williams spent in the house after her mother's death clearing it out and preparing it for closing cannot reasonably be considered living in the house.

Moreover, the Deptulas have not submitted any evidence to establish that Gloria Williams's statement was misleading because it was incomplete or pretextual. She testified repeatedly that she was unaware of the extent of the clean-up that occurred.[22] There was no contradictory evidence offered by the Deptulas. Finally, there was significant circumstantial evidence that supported Williams's testimony: Before agreeing to terms with the Estate, the Deptulas viewed the home on two occasions and walked through the premises with an engineer who had been hired to inspect the house. That these inspections revealed no problems only supports Gloria Williams's testimony that she was unaware of any problems caused by her mother's death in the house.

 The Deptulas rely on a second section of the Restatement— § 551(2)(e)—which recognizes a duty to disclose facts that are basic to the transaction when a party occupies a special relationship with the other such that disclosure can reasonably be expected.[23] This section is likewise inapplicable here. Not only were both the Deptulas and the Estate represented by real estate professionals in an arms-length commercial transaction, but the contract also contained an as-is clause. Under these circumstances the parties clearly did not enjoy a "special relationship." Accordingly, the Estate had no obligation to disclose the circumstances of Ms. Johnson's death.

Because the Deptulas fail to establish that the Estate made any partial or misleading statements, or that they had a special relationship with the Estate, the Deptulas cannot establish that the Estate owed them a common law duty to disclose.

## V. CONCLUSION

Because the Deptulas cannot show that the Estate owed them any duty of disclosure, their claims must fail. The judgment of the superior court is AFFIRMED.

---

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

**20.** *Id.* § 551(2)(b).

**21.** *See id.* § 551 cmt. c.

**22.** Gloria Williams testified by deposition as follows:

> **Question:** It is my understanding that when she was found by the wellness inquiry by the police department, that there was some blood and debris located within the vicinity ... where she was lying. Do you have any knowledge of that?
> **Answer:** No.
> **Question:** Do you know whether or not there was any blood or debris when she was found?
> **Answer:** No.

Gloria Williams's deposition testimony made clear that she was unaware of the extent of the damage caused by the decomposition of her mother's body until this lawsuit was served on her.

**23.** *Id.* § 551(2)(e).