*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DESMOND E. SCHACHT, | ) | |
| | ) | Supreme Court No. S-16964 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-17-06669 CI |
| v. | ) | |
| | ) | O P I N I O N |
| TERRY KUNIMUNE, | ) | |
| | ) | No. 7344 – March 15, 2019 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Frank A. Pfiffner, Judge.

Appearances: Robert M. Libbey, Robert M. Libbey Law Office, Anchorage, for Appellant. David W. Pease, Burr, Pease & Kurtz, PC, Anchorage, and D. Jason Davis, Davis Law Group, PLC, Pacific Palisades, California, for Appellee.

Before: Bolger, Chief Justice, Winfree, Stowers, and Carney, Justices. [Maassen, Justice, not participating.]

WINFREE, Justice.

## I. INTRODUCTION

A son opened joint checking and savings accounts with his father. A few years later the son was injured in a car accident, settled his claim against the other driver, and deposited the settlement check into his joint savings account. A creditor of the father later levied the joint accounts and obtained approximately $90,000 — essentially all of it traceable to the son's settlement money — in partial satisfaction of the creditor's

judgment against the father. The son intervened in the collection action, arguing that the money should be returned to him because he was the equitable owner of the funds in the accounts.

After the superior court's evidentiary hearing on the son's claims, but before the court issued its ruling, the son sent a letter asking the court to consider AS 13.33.201-.227 as supplemental legal authority. The cited statutes provide that, in a dispute between joint account owners and creditors and absent clear and convincing evidence to the contrary, the funds in a joint account generally belong to the owners in accordance with their net contributions to the account.[1] Without mentioning the statutes the son cited, the superior court subsequently held by a preponderance of the evidence that the creditor could levy the joint accounts in their entireties because the financial institution's account agreement the father and son signed provided that they each owned the accounts "jointly and equally . . . regardless of their net contributions."

We vacate the superior court's decision and remand for further proceedings because we conclude that: (1) the son did not waive his argument regarding AS 13.33.211's applicability; (2) the statute applies to determine the ownership interests of joint account owners in a dispute involving a third-party creditor; and (3) the correct standard of proof was not applied and the requisite statutory findings were not made.

## II. FACTS AND PROCEEDINGS

### A. The Joint Bank Accounts

In July 2013 Desmond Schacht opened joint checking and savings accounts with his father, Kenneth Schacht, at Alaska USA Federal Credit Union. Desmond signed Alaska USA's Master Joint Account Agreement as the "member" on the accounts, and Kenneth signed as the "joint owner." Under the Agreement only the "member" was

---

[1]     *See* AS 13.33.206, .211.

permitted to "add, remove[,] or change the status of other joint owners after compliance with applicable Credit Union procedures."  The Agreement did not otherwise provide that the member and joint owner would have different rights with respect to the accounts. Regarding account ownership, the Agreement provided:

> [T]he member and other joint owners agree that all sums now paid on any account, or which may be paid in on such accounts in the future, by any or all of the joint owners to their credit as such joint owners, together with all earnings and other additions, are and *shall be owned by them jointly and equally with right of survivorship* regardless of their net contributions. . . . All accounts covered by this agreement *shall be subject to withdrawal or receipt by any of the joint owners*, regardless of their net contributions, and payment to any of them . . . shall be valid and shall discharge the Credit Union from any further liability for such payment. (Emphases added.)

In August 2016 Desmond was injured in a car accident when another driver crossed into his lane.  He settled his claim against the other driver, and in April 2017 he received a $126,000 settlement check.  He deposited the money in his joint savings account that same month.  Immediately before the deposit, the joint savings account's balance was $0 and the joint checking account's balance was $18.27.

## B.     Creditor's Lawsuit Against Kenneth

Terry Kunimune and Kenneth met in September 2011 in California to discuss a possible joint business venture in Alaska.  Apparently, Terry loaned Kenneth $120,000 in January 2012, and Kenneth signed a promissory note agreeing to repay Terry the full loan amount by December 31, 2012.

In March 2014 Terry sued Kenneth in California for breach of contract, requesting the entire principal balance plus interest, attorney's fees, and costs.  Kenneth never participated in that case.  In June 2016 the California court entered a default

judgment in the amount of $161,517 — the amount of principal, pre-judgment interest, and allowable court costs. Post-judgment interest began accruing at the rate of 10% yearly.

Terry filed his California judgment in the Anchorage superior court in May 2017. He then obtained a writ of execution for $179,463.75 — the amount of the original judgment plus post-judgment interest and costs. In July 2017 Terry served the writ on Alaska USA, and Desmond and Kenneth's joint bank accounts were levied in the amount of $89,297.13 in partial satisfaction of Terry's judgment. That same day Desmond removed Kenneth as a joint account owner.

## C. Desmond's Intervention In The Creditor's Lawsuit

Following the levy Desmond filed a request for bond and hearing pursuant to AS 09.35.130.[2] Desmond then filed a third-party claim and affidavit of ownership stating that he was the "sole equitable owner" of the funds in the joint bank accounts that had been levied. The superior court held an evidentiary hearing over two days in October and November 2017 to consider Desmond's claims.

Kenneth testified that he opened joint accounts with Desmond to help him "manage his account[s]" and so that Kenneth could easily make deposits to help Desmond with his expenses. Kenneth believed when they set up the accounts that he would have to go to a bank branch to transfer money if he were not a joint owner. Kenneth testified that he never had a debit card or checks associated with the joint

---

[2]     AS 09.35.130 provides:

If property levied upon is claimed by a third person as the person's property . . . that person shall release the property. However, the plaintiff, on demand of the person, may give the person an undertaking executed by two sufficient sureties in a sum equal to double the value of the property levied upon.

accounts, set up online access for the accounts, or received monthly account statements. He claimed he did not consider himself the owner of the funds in the joint accounts.

Desmond's testimony was consistent with his father's. Desmond testified that he opened the joint accounts with the understanding that they would "provid[e] easy access for funds to be transferred to [his] account[s]" by his father "for [his] support." Desmond said his understanding was that any amounts deposited into his checking account by his father were "intended for [him]," and he had "no obligation to pay [the money] back." Desmond also stated that he did not know about the judgment against his father or his father's business dealings with Terry.

At the close of the evidentiary hearing, the superior court took the matter under advisement, noting it would research legal authority relating to a creditor's garnishment of jointly held property. One week after the hearing, but before the court had ruled on Desmond's claims, he sent the court a letter, pursuant to Alaska Civil Rule 77(*l*),[3] citing supplemental authorities for the court to consider regarding a third-party creditor's rights against a non-debtor joint owner of a bank account. Desmond cited AS 13.33.201-.227,[4] probate code sections applying to single- and multiple-party accounts. This was the first time Desmond had specifically argued that AS 13.33.201-.227 applied to this dispute. Terry did not respond to the letter.

---

[3] Alaska R. Civ. P. 77(*l*) ("When pertinent authorities come to the attention of a party after the party's memorandum has been filed, or after oral argument but before decision, the party may promptly advise the court, by letter, with a copy to adversary counsel, setting forth the citations.").

[4] Alaska Statute 13.33.211(a) provides that, "[d]uring the lifetime of all parties, an account belongs to the parties in proportion to the net contribution of each to the sums on deposit, unless there is clear and convincing evidence of a different intent." It applies to "controversies between [account owners] and their creditors and other successors." AS. 13.33.206.

The superior court issued its findings of fact and conclusions of law in December 2017. Although it stated that "Desmond had contributed essentially all of the funds seized from the two joint accounts as a result of his settlement check," the court applied the preponderance of the evidence standard and held that the Agreement controlled the dispute. Because the Agreement provided no limitations on Kenneth's ownership or ability to access funds in the accounts, the court held that "Terry, as [Kenneth's] creditor, stands in no worse position with regard to the joint account[s] and may garnish up to the entire amount of the funds." The court concluded that Kenneth could not, in an "attempt to limit Terry's rights as [Kenneth's] creditor," "claim a lesser interest in the joint account[s]" than the Agreement provided.

Desmond filed a motion under Alaska Civil Rule 52(b) requesting that the superior court amend its findings. He made "specific objection[s]" to the findings of fact and conclusions of law that he thought were inconsistent with AS 13.33.211. The court denied the motion.

Desmond also filed a reconsideration motion, arguing that an American Law Reports article[5] the court cited in its conclusions of law supported his position that he was the equitable owner of the funds. The superior court denied Desmond's reconsideration motion without explanation.

Desmond appeals.

---

[5] Martha A. Churchill, Annotation, *Joint Bank Account as Subject to Attachment, Garnishment, or Execution by Creditor of One Joint Depositor*, 86 A.L.R.5th 527 (2001).

## III. STANDARD OF REVIEW

"We review de novo questions of law, including the interpretation of a statute, adopting the rule of law most persuasive in light of precedent, reason, and policy."[6]

## IV. DISCUSSION

### A. Desmond Preserved His Argument That AS 13.33.211 Applies.

Terry argues that Desmond forfeited his argument that AS 13.33.211 applies to this dispute by failing to raise it before the superior court. Terry correctly notes that Desmond referenced the statute for the first time in a letter citing supplemental authorities — sent pursuant to Rule 77(*l*) — after the evidentiary hearing had concluded. Terry argues that Desmond's letter was improper, alleging that it was not sent in connection with a motion as required under Rule 77(*l*). Terry also contends that the arguments in Desmond's motion requesting amendment of the superior court's findings and his motion for reconsideration were untimely.

We reject Terry's contention that Desmond's letter was not permitted by Rule 77(*l*). The rule permits parties to provide the superior court supplemental legal authority relating to a previously filed memorandum or to a point made at oral argument.[7] Desmond's letter provided supplemental authority relating to both previous memoranda he had filed and points he had made at the evidentiary hearing. We therefore must conclude that Desmond has not forfeited his argument that AS 13.33.211 applies to this dispute. Forfeiture rules are based on the principle that it is unfair to the trial court and unjust to the opposing litigant for an appellate court to rule on a ground that was not

---

**6** *Toliver v. Alaska State Comm'n for Human Rights*, 279 P.3d 619, 622 (Alaska 2012) (quoting *Alaskans For Efficient Gov't, Inc. v. Knowles*, 91 P.3d 273, 275 (Alaska 2004)).

**7** Alaska R. Civ. P. 77(*l*).

presented below.[8]  In this case there is no such unfairness or injustice.  Desmond's Rule 77(*l*) letter alerted the superior court to the statute's existence before the court issued its findings of fact and conclusions of law.  Because Terry was permitted to respond[9] to Desmond's letter and the superior court was able to consider the statute before ruling on his claims, he properly raised the argument before the superior court.  This also resolves Terry's contentions that Desmond's arguments in his post-judgment motions were untimely.

B.    **Alaska Statute 13.33.211 Governs The Ownership Interests Of Joint Account Owners In A Dispute With A Third-Party Creditor.**

Desmond's principal argument is that the superior court erred by not applying AS 13.33.211 to find that he was the equitable owner of the funds in the account and ordering Terry to return the money.  We first consider whether the statute applies to this case.  "In interpreting a statute we 'look to the plain meaning of the statute, the legislative purpose, and the intent of the statute.' "[10]  We apply a sliding-scale approach where "[t]he plainer the statutory language is, the more convincing the

---

[8]    *See Harvey v. Cook*, 172 P.3d 794, 802 (Alaska 2007) ("[P]ermitting a party to claim error regarding a claim not raised and litigated below 'is both unfair to the trial court and unjust to the opposing litigant.' " (quoting *In re Marriage of Walker*, 138 Cal. App. 4th 1408, 1418 (2006))); 5 AM. JUR. 2D *Appellate Review* § 574 (2018) ("[I]t is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider.").

[9]    Rule 77(*l*) provides that "[a]ny response must be made promptly."

[10]    *State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins. v. Alyeska Pipeline Serv. Co.*, 262 P.3d 593, 597 (Alaska 2011) (quoting *Premera Blue Cross v. State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins.*, 171 P.3d 1110, 1115 (Alaska 2007)).

evidence of contrary legislative purpose or intent must be" to rebut that meaning.[11]  For a statute based on a uniform act,[12] official comments are "of persuasive assistance" in interpreting the act, but are not "controlling."[13]

Alaska Statute 13.33.211(a) provides that, "[d]uring the lifetime of all parties, an account belongs to the parties in proportion to the net contribution[14] of each to the sums on deposit, unless there is clear and convincing evidence of a different intent."  The statute defines "account" as a "contract of deposit between a depositor and

---

[11]     *Id.* (quoting *Gov't Emp. Ins. Co. v. Graham-Gonzalez*, 107 P.3d 279, 284 (Alaska 2005)).

[12]     Alaska Statutes 13.33.201-.227 went into effect in 1996 as part of the Alaska legislature's enactment of the revised Uniform Probate Code.  Ch. 75, § 13, SLA 1996.  The section of the Uniform Probate Code that was enacted as AS 13.33.201-.227 is also known as the Uniform Multiple-Person Accounts Act.  *See* UNIF. PROBATE CODE §§ 6-201 to -227 (UNIF. LAW COMM'N 1989).

[13]     *ABM Escrow Closing & Consulting, Inc. v. Matanuska Maid, Inc.*, 659 P.2d 1170, 1172 (Alaska 1983) (quoting *Morrow v. New Moon Homes, Inc.*, 548 P.2d 279, 287 n.24 (Alaska 1976)).

[14]     "Net contribution" means

> the sum of all deposits to an account made by or for the party, less all payments from the account made to or for the party that have not been paid to or applied to the use of another party and a proportionate share of any charges deducted from the account, plus a proportionate share of any interest or dividends earned, whether or not included in the current balance.

AS 13.33.211(d).

a financial institution"[15] and includes "multiple-party account[s],"[16] which are "account[s] payable on request to one or more of two or more parties whether or not a right of survivorship is mentioned."[17] Desmond and Kenneth's joint accounts were "accounts" under AS 13.33.201 because they were "contract[s] of deposit between" them and Alaska USA that were "payable on request to" either of them.[18] The statute applies to disputes between the joint account owners and their creditors,[19] but not to disputes between account owners[20] or between account owners and their financial institution.[21]

After examining the statute's plain language, we conclude that the statute applies to determine the ownership of joint account funds in disputes, such as the one in this case, between a creditor and an owner of a joint bank account. Consistent with our

---

[15]     AS 13.33.201(1).

[16]     AS 13.33.203(a) ("An account may be for a single party or multiple parties. A multiple-party account may be with or without a right of survivorship between the parties.").

[17]     AS 13.33.201(5).

[18]     *See* AS 13.33.201(1), (5).

[19]     AS 13.33.206 ("The provisions of AS 13.33.211-13.33.216 concerning beneficial ownership as between parties or as between parties and beneficiaries apply only to controversies between those persons and their creditors and other successors . . . .").

[20]     *See* UNIF. PROBATE CODE § 6-211 cmt. (UNIF. LAW COMM'N 1989) ("The section does not undertake to describe the situation between parties if one party withdraws more than that party is then entitled to as against the other party. . . . Rights between parties in this situation are governed by general law other than this part.").

[21]     *Id.* (" 'Net contribution' as defined by subsection (a) has no application to the financial institution-depositor relationship.").

-10-                                                                          7344

precedent,[22] the statute implicitly recognizes a distinction between account ownership and ownership of the money in an account. The statute contemplates that some "accounts" will be payable to more than one owner,[23] yet it still provides that in a dispute between account owners and a creditor those accounts "belong[] to [the account owners] in proportion to the net contribution of each," absent "clear and convincing evidence" that the owners had a different intent.[24] "[B]elongs to" in this context refers to equitable, not legal, ownership of the funds in an account.[25]

This interpretation is also compelled by AS 13.33.206's limitation on subsection .211's scope and our reluctance to adopt "statutory constructions that reach absurd results."[26] Alaska Statute 13.33.206 provides that subsection .211's provisions concerning the beneficial ownership of joint accounts "apply *only* to controversies between [beneficial account owners] and their creditors and other successors." (Emphasis added.) Subsection .211 does not determine a joint account owner's rights

---

[22] *See von Gemmingen v. First Nat'l Bank of Anchorage*, 890 P.2d 60, 63 (Alaska 1995) (recognizing that "judgment debtors may not have a right to all of the money deposited to [an] account").

[23] *See* AS 13.33.203(a).

[24] *See* AS 13.33.211(a).

[25] *See* Unif. Probate Code § 6-211 cmt. (noting that this subsection reflects assumption that joint owners of a bank account "usually intend[] no present change of beneficial ownership" of funds in the account); *see also Craig v. Hastings State Bank*, 380 N.W.2d 618, 622-23 (Neb. 1986) ("No reasonable person would attach a meaning for 'belongs to[]' . . . other than 'to be the property of' a person." (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED 201 (1981))).

[26] *Premera Blue Cross v. State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins.*, 171 P.3d 1110, 1120 (Alaska 2007).

against a co-owner[27] or against a financial institution.[28]  It consequently is difficult to imagine cases in which subsection .211 would apply if not for disputes, like this one, between a joint account owner and a creditor.  Interpreting the statute to not apply to this situation risks turning it into a nullity.[29]

We note that, although this is an issue of first impression for us, distinguishing between the legal and equitable interests of joint bank account owners is consistent with the majority practice of courts around the country and with existing Alaska law.  We have identified appellate courts in at least 29 states that have made such a distinction.  In 12 states, appellate courts have applied their versions of the Uniform Multiple-Person Accounts Act to determine a creditor's right to garnish funds from joint bank accounts.[30]  In another 17 states, appellate courts have applied common law

---

[27]     UNIF. PROBATE CODE § 6-211 cmt. ("The section does not undertake to describe the situation between parties if one party withdraws more than that party is then entitled to as against the other party.").

[28]     *Id.* (" 'Net contribution' as defined by subsection (a) has no application to the financial institution-depositor relationship.").

[29]     *See Premera Blue Cross*, 171 P.3d at 1120 (declining to adopt interpretation of statute that would render statute "a nullity").

[30]     *See Harvey v. Harvey*, 841 P.2d 375, 378 (Colo. App. 1992); *Lamb v. Thalimer Enters., Inc.*, 386 S.E.2d 912, 914 (Ga. App. 1989); *Browning & Herdrich Oil Co. v. Hall*, 489 N.E.2d 988, 991-92 (Ind. App. 1986); *Brown v. Commonwealth*, 40 S.W.3d 873, 881-82 (Ky. App. 1999); *Szelenyi v. Miller*, 564 A.2d 768, 770-71 (Me. 1989); *Enright v. Lehmann*, 735 N.W.2d 326, 331 (Minn. 2007); *Craig*, 380 N.W.2d at 622-23; *Alcantar v. Sanchez*, 257 P.3d 966, 972 (N.M. App. 2011); *Deutsch, Larrimore & Farnish, P.C. v. Johnson*, 848 A.2d 137, 142-43 (Pa. 2004); *RepublicBank Dallas v. Nat'l Bank of Daingerfield*, 705 S.W.2d 310, 311-12 (Tex. App. 1986) (interpreting prior Texas Probate Code Ann. § 438(a) (1979), which has been reenacted as Texas Estates Code Ann. § 113.102 (2012)); *In re Estate of Maxfield*, 856 P.2d 1056, 1059 (Utah 1993); *Lewis v. House*, 348 S.E.2d 217, 219 (Va. 1986).

principles or other state statutes to allow joint account owners to establish their equitable ownership of joint account funds in response to a creditor's garnishment action.[31]

The State already has interpreted AS 13.33.211 to apply to actions in which the Department of Revenue, Child Support Services Division seizes joint bank accounts to satisfy past-due child support obligations.[32]   In those situations, the Division "apportion[s] money among the joint owners in accordance with AS 13.33.211."[33] Differentiating between legal and equitable ownership of the funds in joint accounts is also consistent with Alaska cases recognizing that it is possible for a joint owner of property to commit a crime if that owner infringes on another owner's interest in the property.[34]   Those cases implicitly recognize that legal title does not conclusively

---

[31]        *See Amarlite Architectural Prod., Inc. v. Copeland Glass Co.*, 601 So. 2d 414, 416 (Ala. 1992); *Hayden v. Gardner*, 381 S.W.2d 752, 753 (Ark. 1964); *Tinsley v. Bauer*, 271 P.2d 116, 121 (Cal. Dist. App. 1954); *Antuna v. Dawson*, 459 So. 2d 1114, 1116-17 (Fla. Dist. App. 1984); *Traders Travel Int'l, Inc. v. Howser*, 753 P.2d 244, 248 (Haw. 1988); *Highsmith v. Dep't of Pub. Aid*, 803 N.E.2d 652, 657 (Ill. App. 2004); *Walnut Valley State Bank v. Stovall*, 574 P.2d 1382, 1386 (Kan. 1978); *Morgan Stanley & Co. v. Andrews*, 123 A.3d 640, 650 (Md. Spec. App. 2015); *Danielson v. Lazoski*, 531 N.W.2d 799, 802 (Mich. App. 1995); *Delta Fertilizer, Inc. v. Weaver*, 547 So. 2d 800, 802-03 (Miss. 1989); *Esposito v. Palovick*, 101 A.2d 568, 572 (N.J. Super. App. Div. 1953); *Jimenez v. Brown*, 509 S.E.2d 241, 246 (N.C. App. 1998); *Baker v. Baker*, 710 P.2d 129, 134 (Okla. Civ. App. 1985); *Greenwood v. Beeson*, 454 P.2d 633, 636 (Or. 1969); *Barrup v. Barrup*, 111 A.3d 414, 422 (Vt. 2014); *Fireman's Fund Ins. Co. v. Nw. Paving & Const. Co.*, 891 P.2d 747, 749-50 (Wash. App. 1995); *Hancock v. Stockmens Bank & Tr. Co.*, 739 P.2d 760, 762-63 (Wyo. 1987).

[32]        *See* 15 Alaska Administrative Code 125.463(f) (2018).

[33]        *Id.*

[34]        *See Hughes v. State*, 56 P.3d 1088, 1094 (Alaska App. 2002) (affirming defendant's conviction for criminal mischief for damaging the property of another even though the defendant was the co-owner of the property at issue); *LaParle v. State*, 957
(continued...)

establish an owner's right to exercise the entire "bundle"[35] of rights accompanying property ownership.

In summary, courts considering a challenge by a joint account owner to a creditor's levying of funds from a joint account presumptively must apply AS 13.33.211 and calculate the "net contributions"[36] of each account owner to determine the amount of funds subject to levy. A creditor can, in turn, rebut the presumption that joint owners own the account in accordance with their net contributions by providing "clear and convincing evidence of a different intent."[37]

**C.     We Remand To Allow The Superior Court To Make Findings Under The Correct Standard Of Proof.**

Having determined that the superior court should have applied AS 13.33.211, we must vacate the court's conclusions and remand the case for appropriate findings and application of the correct legal standard.[38] The superior court

---

[34]     (...continued)
P.2d 330, 333-34 (Alaska App. 1998) (affirming defendant's conviction for theft of marital assets); *cf. State v. Gagne*, 79 A.3d 448, 456 (N.H. 2013) ("The fact that the defendant did not need the victim's permission in order to withdraw funds from the account, however, does not mean that the defendant was privileged to appropriate the victim's interest in those funds.").

[35]     63C AM. JUR. 2D *Property* § 1 (2018) (footnotes omitted) ("A common idiom describes property as a 'bundle of sticks,' — a collection of individual rights which, in certain combinations, constitute property, and which . . . can be divided in terms of dimension, duration, and scope.").

[36]     AS 13.33.211(d).

[37]     AS 13.33.211(a).

[38]     *See Roberson v. Manning*, 268 P.3d 1090, 1093 (Alaska 2012) (vacating and remanding because "additional findings of fact [we]re required to correctly apply the
(continued...)

made all of its findings under the lower "preponderance of the evidence" standard, rather than the "clear and convincing" standard required by AS 13.33.211(a). And the court made no factual findings about Desmond's and Kenneth's intents as the statute requires.[39] On remand the court should determine whether Terry established by clear and convincing evidence that Desmond's and Kenneth's intents rebutted AS 13.33.211(a)'s ownership presumption. In making findings about intent, the court should consider the parties' testimony about their intents, the Agreement, and any "extrinsic evidence regarding the parties' intent at the time the contract was made."[40] "The extrinsic evidence that may be considered includes 'the language and conduct of the parties, the objects sought to be accomplished and the surrounding circumstances at the time the contract was negotiated,' as well as the conduct of the parties after the contract was entered into."[41]

> **D.    Desmond Did Not Waive AS 13.33.211's Application By Signing The Agreement, And The Legal Authority Terry Cites Is Distinguishable From This Case.**

Terry appears to argue that — even if AS 13.33.211 applies — we can affirm the superior court's decision because (1) by signing the Agreement, Desmond

---

[38]     (...continued) law"); *cf. Veselsky v. Veselsky*, 113 P.3d 629, 634 n.16 (Alaska 2005) ("We have held that the trial court, not this court, is in the best position to judge witnesses' credibility and evaluate their testimony.").

[39]     *See* AS 13.33.211(a) (providing that "an account belongs to the parties in proportion to the net contribution of each . . . unless there is clear and convincing evidence of a different intent").

[40]     *Fairbanks N. Star Borough v. Tundra Tours, Inc.*, 719 P.2d 1020, 1024 (Alaska 1986) (citing *Norton v. Herron*, 677 P.2d 877, 879-80 (Alaska 1984)).

[41]     *Nautilus Marine Enters., Inc. v. Exxon Mobil Corp.*, 305 P.3d 309, 316 (Alaska 2013) (quoting *Peterson v. Wirum*, 625 P.2d 866, 870 n.7 (Alaska 1981)).

waived any rights that AS 13.33.211 might have provided him, and (2) *von Gemmingen v. First National Bank of Anchorage*[42] and several out-of-state cases require us to hold that the Agreement controls Desmond's and Kenneth's ownership interests in the joint accounts. We disagree for the reasons detailed below.

**1.    Desmond did not knowingly and voluntarily agree to waive AS 13.33.211's application by signing the Agreement.**

Terry argues that parties to a contract can waive statutory protections, citing several Alaska cases in which he claims we found such waivers were valid and enforceable. He claims that Desmond waived any rights he may have had under AS 13.33.211 by signing the Agreement. Terry is correct that "parties may agree to waive statutory rights unless a question of public policy is involved, or where rights of third parties, which the statute was intended to protect, are involved."[43] However such waivers "must be knowing and voluntary."[44] We agree with Desmond that, if he did waive any rights, he did not do so knowingly; the Agreement does not reference AS 13.33.211, waiver, equitable ownership, or the rights of third-party creditors. And the cases Terry cites are not relevant to this dispute; in each case, a party or a party's representative agreed to waive statutory rights knowingly and voluntarily in the course of a negotiation.[45]

---

[42]    890 P.2d 60 (Alaska 1995).

[43]    *See Ramsey v. City of Sand Point*, 936 P.2d 126, 130 (Alaska 1997) (quoting 17A AM. JUR. 2D *Contracts* § 256, at 259-60 (1991)).

[44]    *Deptula v. Simpson*, 164 P.3d 640, 644 (Alaska 2007); *see also Ramsey*, 936 P.2d at 130 (describing waiver as "the intentional relinquishment of a known right" (quoting *Milne v. Anderson*, 576 P.2d 109, 112 (Alaska 1978))).

[45]    *See Ramsey*, 936 P.2d at 130-31 (upholding police chief's agreement to waive statutory "just cause" termination protections in exchange for six months of
(continued...)

**2. The cases Terry cites requiring courts to look solely to account agreements to determine a debtor's ownership interest in an account are inapposite.**

Terry contends that *von Gemmingen*[46] stands for the proposition that an account agreement like the Agreement in this case determines a debtor's interest in a levied account. He also cites out-of-state cases that he contends stand for the same proposition. But *von Gemmingen* is distinguishable from this case. In *von Gemmingen* the accounts at issue were escrow accounts,[47] not joint bank accounts, and there were no relevant statutory provisions, as there are here, dictating the parties' ownership interests in a dispute with creditors. More importantly, we recognized in *von Gemmingen* that "judgment debtors may not have a right to all of the money deposited to the account,"[48] and a "judgment creditor may attach only property actually owned by the judgment debtor."[49] In this case a statute controls how a court should determine what property the judgment debtor "actually owns."

None of the out-of-state cases Terry cites in his brief supports his argument that an account agreement conclusively establishes owners' interests in a joint account. *Wagner v. State* stands for the opposite proposition; the Maryland Court of Appeals did

---

[45]    (...continued)
severance pay); *Deptula*, 164 P.3d at 645 (holding that home buyer's waiver of statutory disclosure rights pursuant to "unambiguous" waiver agreement was valid and enforceable); *Blackburn v. State, Dep't of Transp. & Pub. Facilities*, 103 P.3d 900, 905 (Alaska 2004) (holding that union's waiver of member's statutory arbitration rights in collective bargaining agreement was valid and enforceable).

[46]    890 P.2d at 64.

[47]    *See id.* at 63.

[48]    *Id.*

[49]    *Id.*

-17-                                                                                          7344

find that *an* agreement controlled a dispute between co-owners, but it was an informal verbal agreement between co-owners about their intent in opening the account, not the formal account documents.[50] The court in *Wagner* upheld the joint account owner's theft conviction because of unauthorized withdrawals from the account.[51] In *Signature Bank v. HSBC Bank USA, N.A.* the New York Supreme Court Appellate Division upheld a creditor's right to levy an entire joint bank account, but only because the joint owners failed to "provid[e] direct proof that no joint tenancy was intended or substantial circumstantial proof that the joint account had been opened for convenience only."[52] In New York joint account owners are permitted to provide extrinsic evidence to rebut an initial presumption that a joint account is a "joint tenancy."[53] In the last case Terry cites, *Fleet Bank Connecticut, N.A. v. Carillo*, the Connecticut Supreme Court reached its result by relying on the state's bank protection laws, not the parties' account documents,[54] and the case represents a minority position that we decline to follow.[55]

---

[50] *See* 128 A.3d 1, 19 (Md. App. 2015) ("[T]he titling of the Account, listing Father and Wagner as 'joint owners,' did not create an ownership interest in the funds in the Account, as Father and Wagner agreed that the funds belonged to Father.").

[51] *Id.* at 20.

[52] 889 N.Y.S.2d 242, 244 (N.Y. App. Div. 2009) (quoting *Fragetti v Fragetti*, 692 N.Y.S.2d 442, 443 (N.Y. App. Div. 1999)).

[53] *See Viggiano v. Viggiano*, 523 N.Y.S.2d 874, 875 (N.Y. App. Div. 1988) (holding that account was a "convenience account" because owner rebutted presumption that joint account was intended).

[54] 691 A.2d 1068, 1072 (Conn. 1997).

[55] *See Morgan Stanley & Co. v. Andrews*, 123 A.3d 640, 647 n.8 (Md. Spec. App. 2015) (declining to follow *Fleet Bank* as "an outlier with respect to garnishability of jointly[]titled accounts").

**E.     We Decline to Determine The Correct Fund-Tracing Method.**

Desmond also argues in his brief that, to determine a joint owner's "net contributions" under AS 13.33.211, we should adopt fund-tracing methods that Texas courts have used.  Because the superior court found that Terry was entitled to levy all of the money in the joint accounts, it did not trace the funds in the accounts to determine Desmond's and Kenneth's respective ownership interests according to their net contributions.  Accordingly, the issue of the correct fund-tracing method to use in these circumstances is not properly before us, and we decline to consider it.[56]

## V.     CONCLUSION

The superior court's decision with respect to Desmond's ownership interest in the joint bank accounts is VACATED and this case is REMANDED for further proceedings consistent with this opinion.

---

[56]     *Cf. Nelson v. Municipality of Anchorage*, 267 P.3d 636, 645 (Alaska 2011) (holding that plaintiff's claim was not ripe for review because he had not yet litigated his claim below).