NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

# THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| RICHARD GREEN, on behalf of Un-named Children 1-4, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |  Supreme Court No. S-18080 <br><br> Superior Court Nos. 3PA-20-00595/ 00596/00597/00598 CI <br><br> MEMORANDUM OPINION AND JUDGMENT* <br><br> No. 1977 – August 2, 2023 |
| Appellant, | |
| v. | |
| PHUONG HOANG DINH and STATE OF ALASKA, DEPARTMENT OF HEALTH & SOCIAL SERVICES, OFFICE OF CHILDREN'S SERVICES, | |
| Appellees. | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Kari Kristiansen and Jonathan A. Woodman, Judges.

Appearances: Richard Green, pro se, Wasilla, Appellant. Davyn Williams, Alaska Legal Services, Anchorage, for Appellee Dinh. Katherine Demarest, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellee State of Alaska.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

---

\* Entered under Alaska Appellate Rule 214.

## I. INTRODUCTION

A father filed petitions for domestic violence protective orders (DVPOs) on behalf of each of his four children against the children's mother. At the time of the father's petitions, the Office of Children's Services (OCS) had legal custody of the children and had placed them with their mother. OCS sought intervention in the DVPO cases, which was granted. The court then dismissed the father's DVPO petitions, reasoning that the children's legal interests were "represented by OCS." The father appeals. Discerning no reason that a non-custodial parent cannot file and maintain petitions for protective orders on behalf of that parent's children, we reverse.

## II. FACTS AND PROCEEDINGS

Richard Green and Phuong Dinh have four children together. In early September 2020, after investigating allegations that Green had abused one of the children, OCS filed a non-emergency child in need of aid (CINA) petition. Over Green's objection the court made provisional findings that the children were in need of aid and awarded OCS temporary custody. OCS placed the children with Dinh.

Later that month Green filed four DVPO petitions against Dinh, one on behalf of each of his children.[1] The petitions stated a variety of allegations, including that "Dinh held the children as hostages . . . after multiple written threats to hurt the children if [Green] did not get her a green card." Green also recounted alleged statements by the children that their mother hit and threatened them.

Dinh filed a motion to dismiss Green's petitions. She argued that Green did not have legal custody of the children at the time he filed the petitions and thus had no authority to bring them on the children's behalf. Green opposed the motion, arguing

---

[1] Green also filed a petition for a DVPO against Dinh on his own behalf, which was denied. Green filed a separate appeal related to that petition. We consolidated that appeal with this matter for briefing, and ultimately deconsolidated the two matters for purposes of decision. This decision addresses only the appeal regarding Green's DVPO petitions on behalf of his four children.

that Dinh had no "statutory authority" to request dismissal of the petitions and that his right to file DVPO petitions on behalf of his children is not subject to having legal or physical custody.

Around the same time OCS filed a motion to intervene in the DVPO cases. OCS argued that as the children's legal custodian it had the right to intervene and that Green's filing of the DVPO petitions interfered with OCS's placement decisions. OCS further argued that Green's "parental rights and any civil custody orders" were suspended due to OCS having legal custody. Green opposed OCS's motion to intervene. He argued that as the children's father, he had "the statutory right to file and obtain a protection order to protect . . . the minor children."

At a combined hearing in the DVPO and CINA cases, the superior court indicated that it would wait to address the DVPO petitions until after the CINA probable cause proceedings concluded. At a later combined hearing the court indicated that its treatment of Green's DVPO petitions "depend[ed] on [its] ruling . . . on whether he has standing or not to have a DV order on behalf of the children." The court indicated that if it were to "dismiss the CINA case, obviously [Green] would have standing; but if [it did not], then OCS has legal custody."

Several days later the court granted OCS's motion to intervene in the DVPO cases. The court found that "the disposition of the [DVPOs] may as a practical matter impair or impede [OCS's] relationship of legal custody over the children and ability to protect the children." One week later the court determined that there was probable cause that the children were in need of aid and granted OCS temporary custody of the children. The court then dismissed the DVPO petitions brought by Green on behalf of the children, indicating that the petitions had been "withdrawn by the petitioners" and that the children's "legal interests are now represented by OCS."

Green appeals the dismissal of the DVPO petitions. Green also contends that the superior court erred in allowing OCS to intervene in the DVPO matters. Green raises a variety of other appeal points: that the court engaged in "judicial deception,"

that he was the victim of "trial by ambush," that the CINA court made various statutory and constitutional errors in finding his children in need of aid, and that the court lacked jurisdiction due to a purported Indonesian arbitration award that he asserted should govern.

## III. STANDARD OF REVIEW

"We review questions of statutory interpretation de novo, 'adopting the rule of law that is most persuasive in light of precedent, reason, and policy.' "[2]

## IV. DISCUSSION

### A. Custody And Visitation Actions That Implicate Decisions In A CINA Case Must Be Heard Within The CINA Case.

Green contends that OCS should not have been permitted to intervene in the DVPO proceedings. He would apparently have the DVPO proceedings move forward without OCS's involvement and separately from the children's CINA cases. OCS and Dinh respond that the superior court appropriately granted intervention in light of OCS's legal custody of the children and its responsibility to provide for their care and safety. We reject Green's argument that the DVPO proceedings should have moved forward without OCS and separate from the CINA proceedings. We further conclude that OCS's intervention was unnecessary because state law already requires Green's DVPO petitions to be heard within the CINA proceedings.

Alaska Statute 47.10.113 provides that for any child in state custody "a court shall hear a request to make, modify, or vacate an order for the custody of or visitation with [the] child . . . as part of the child-in-need-of-aid proceedings related to the child."[3] The legislative history suggests that the statute was intended to "streamline

---

[2]    *Angelica C. v. Jonathan C.*, 459 P.3d 1148, 1155 (Alaska 2020) (quoting *Schacht v. Kunimune*, 440 P.3d 149, 153 (Alaska 2019)).

[3]    AS 47.10.113(a); *see also* AS 25.24.150(a) ("The court shall hear custody proceedings related to a child in state custody under AS 47.10 as part of the child-in-need-of-aid proceedings . . . .").

a number of different legal decisions that could impact a child in the state child welfare system."[4]  Before this law was enacted, "adoption, guardianship, and civil custody matters all happened in different courts, often with different judges and at different times, which often created redundancies and delays."[5]  Now, AS 47.10.113 requires that all hearings and motions regarding custody of or visitation with a child in need of aid be heard "as part of" the CINA proceedings so that the CINA judge is "most informed and best equipped to provide a good judicial determination."[6]  The statute effectively creates a "one family, one judge" system whereby once a CINA case is initiated, the CINA case takes priority and all custody- and visitation-related matters associated with that child are addressed within the CINA proceedings.[7]

While AS 47.10.113 does not specifically address DVPO petitions, some protective orders can impact custody and visitation when children are involved, as this case demonstrates.  When Green filed the DVPO petitions on behalf of his children, the children had been provisionally declared in need of aid and removed from Green, were in OCS's temporary legal custody, and were placed with their mother.  Green's petitions directly implicated the children's placement with their mother because if the allegations were proven true, any resultant DVPO would likely include orders related to the mother's contact with the children.  In effect, Green's DVPO petitions on behalf of his children requested a change in OCS's decision to place the children with their mother.

Both OCS and Dinh argue that Green's ability to bring and maintain DVPO petitions on behalf of the children against the wishes of OCS could "frustrate"

---

[4]    *Amy S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 440 P.3d 273, 280 (Alaska 2019) (citing Minutes, H. Health & Soc. Servs. Comm., Hearing on H.B. 200, 29th Leg., 1st Sess. 3:06-3:14 (Mar. 29, 2016) (testimony of Christy Lawton, Dir. of OCS)).

[5]    *Id.*

[6]    *Id.*

[7]    *See id.*

OCS's placement efforts and "undermine" OCS's ability to protect the children. But as a general principle, and considering the purpose of AS 47.10.113, we do not agree that this is always true. If, for example, a parent's allegations in a DVPO petition brought forth information not previously known to OCS, the parent's ability to bring and maintain the petition before the court would further OCS's ability to protect the children and the court's ability to issue an informed decision.

Regardless of whether a DVPO proceeding may help or frustrate OCS's ultimate goals, holding DVPO proceedings separately from related CINA proceedings could result in significant problems. For example, had a court granted Green's requested DVPOs without knowledge of the children's CINA proceedings, the resulting order could have disrupted the children's placement and services. And that order would have been made without the benefit of the CINA parties' knowledge and participation, and without addressing the elements and burdens necessary to the CINA framework. This is one reason why AS 47.10.113 requires any proceeding regarding custody of or visitation with a child in need of aid to be heard within that child's CINA case.

As of September 2020 the court was hearing the CINA and DVPO matters together in joint hearings. The court also granted OCS's request to intervene in the DVPO matters. Based on our interpretation of AS 47.10.113, the intervention order was unnecessary: a DVPO petition brought on behalf of a child in OCS custody must be heard as part of the CINA proceedings when the petition effectively functions as a request to make, modify, or vacate a custody or visitation order. To the extent Green argues that OCS and other parties in the CINA proceedings should not have been permitted to participate in proceedings related to his DVPO petitions on behalf of the

children, we reject that position as inconsistent with AS 47.10.113 and the best interests of the children.[8]

##### B. The Superior Court Erred In Dismissing The DVPO Petitions.

DVPO petitions are governed by AS 18.66.100. Subsection (a) directs that "[a] parent, guardian, or other representative appointed by the court under this section may file a petition for a protective order on behalf of a minor."[9] The statute does not specifically require that a parent filing a DVPO petition on behalf of a minor have legal custody of that minor. This is consistent with our experience that non-custodial parents outside of the CINA context are able to bring and maintain DVPO petitions on behalf of their children.[10] Green argues that as the children's father he had a statutory right to file the DVPO petitions. Green further argues that it was improper for the court to dismiss his petitions where no motion to dismiss was filed. We agree.

In dismissing Green's DVPO petitions, the court stated that the matter was dismissed because the petitions were "withdrawn by the petitioners" and the children's "legal interests are now represented by OCS." But it is clear that "the petitioner," Green, did not withdraw his petitions on behalf of the children. Instead, it appears the court dismissed the petitions at OCS's behest. Without further explanation of the basis for this dismissal, we must reverse.

No party has submitted any compelling argument to support the assertion that once OCS has legal custody of a child it can unilaterally "withdraw" a DVPO petition filed by someone else. There is also no argument to support a court dismissing

---

[8] Although the intervention order was unnecessary, we affirm the order in this case, given that it allowed the participation of the children's legal custodian, OCS, in the DVPO litigation, consistent with the purposes behind AS 47.10.113.

[9] AS 18.66.100(a).

[10] *See, e.g.*, *John E. v. Andrea E.*, 445 P.3d 649, 659 (Alaska 2019) (affirming DVPO granted to non-custodial parent on behalf of child against parent with sole legal custody).

or withdrawing a DVPO petition without a motion. Nor can we discern any reason to uphold such actions based upon the arguments before us.

OCS argues that once it has legal custody of a child it can withdraw any petition filed on that child's behalf. Citing AS 47.10.084(a) OCS asserts that its general "duty to protect" children in its custody gives it this power, and that a contrary result would undermine its ability to meet those responsibilities. Dinh makes a similar argument. These concerns, however, are alleviated by requiring a DVPO petition implicating custody or visitation to be heard as part of the CINA proceedings. At such a hearing OCS could advocate for the petition's dismissal, or present evidence to assist the court in making an appropriate placement decision based on the court's decision on the petition.

OCS and Dinh provide no other reason why Green is prohibited from maintaining a DVPO petition or how OCS's general "duty to protect" gives it such an extraordinary power as to unilaterally withdraw a petition filed by another. Nor does either explain why a non-custodial parent would be able to bring and maintain a protective action on behalf of his or her children when the other parent has legal custody, but not when OCS is the legal custodian.

Because the DVPO statute allows a parent to bring and maintain a DVPO petition on behalf of a minor, and the arguments before us provide no basis for concluding otherwise, we reverse the superior court's dismissal of the DVPO petitions brought by Green on behalf of his children.

## C.    We Do Not Address The Remainder Of Green's Arguments.

Green makes a plethora of other arguments in his brief. These arguments are wide ranging and include claims that the court engaged in "judicial deception" and that Green was the victim of "trial by ambush," various complaints about the process by which his children were found to be in need of aid, and his assertion that the court lacked jurisdiction due to a purported Indonesian arbitration award. To the extent these arguments relate to the DVPO proceedings, they are unsupported by the record. We

note that many of Green's complaints appear directed toward separate proceedings that are not before us.  We therefore decline to further address those arguments.[11]

## V.    CONCLUSION

We REVERSE the dismissal of Green's DVPO petitions filed on behalf of his four children and REMAND the cases for further proceedings consistent with this opinion.

---

[11]    *R.I. v. C.C.*, 9 P.3d 274, 279 (Alaska 2000) (affirming that issues pertaining to separate proceeding were not properly before us on appeal).